**Your form was submitted to FINRA successfully. Please print this form now if you wish to retain a copy for your records.**

**Filing ID:** 525718 (Please retain this number for further inquiries regarding this form)

**Submitted By:** rcarmel

**Submitted Date:** Wed Jun 03 15:20:22 EDT 2015

<< Back to Filing Cabinet

Introduction

# Continuing Member Application

### Introduction

The Continuing Membership Application Form ("Form CMA," "Form," or "Application") is designed to assist Applicants in the preparation of an Application filed pursuant to NASD Rule 1017 in which the Applicant seeks approval from the Financial Industry Regulatory Authority, Inc. ("FINRA") for a change in ownership, control or business operations. The completed Form, with all required questions answered, and all required supporting documentation attached, must be filed electronically with FINRA.

To assist in the completion of Form CMA, important information is provided below concerning the following:

- Completing the Form
  - Substantially Complete Requirement
  - Form Structure and Using the Form
  - Mandatory Information
  - Terms Used in the Form
  - Saving the Form Prior to Submission
  - Submitting the Form
- Maintaining the Accuracy of the Application

### Completing the Form

The Form references information and documentation required under the Membership Rules of FINRA (see NASD Rule 1010 Series). Form CMA is structured to capture information and documentation pertinent to the Applicant's proposed change in ownership, control or business operations. However, additional information and documentation may be requested once the FINRA Staff ("Staff") has had an opportunity to review the Application.

Applicants are encouraged to include as much of the requested information and documentation in their initial Form CMA submission as possible. Experience has shown that Applications containing well thought out, detailed, and complete information and documentation can be processed more efficiently with less need for Staff to seek out supplemental information. Complete Applications help the Staff to gain a prompt understanding of the Applicant's proposed change, which facilitates FINRA's ability to review whether the Applicant meets the standards for admission contained in NASD Rule 1014, against which applications submitted utilizing the Form CMA are evaluated. Applicants are encouraged to review additional materials about the Continuing Membership Application process, available on www.finra.org. Applicants should also consider consulting the Staff in advance of submitting Form CMA, particularly for any Application involving novel or complex business arrangements.

### Substantially Complete Requirement

Form CMA is intended to provide an Applicant with information and requests that are required of it in the Application process. Applicants should note that an Application will not be accepted for processing unless it is deemed substantially complete. While the Form identifies information and documentation that is minimally required in order to file Form CMA, an Applicant is urged not to limit itself to completion of the required fields if and when any optional information fields are applicable or if additional information can be provided that is material to the Applicant's planned change. It is also important to note that, since the Form is submitted exclusively on an electronic basis, it is critical that the Applicant ensure that each attached document is actually the document indicated and contains relevant information.

Every Form CMA will be reviewed initially for content by Staff. Should an Applicant fail to provide accurate material information or documentation relevant to the Applicant's proposed change, a submitted Form CMA may be rejected as "not substantially complete."

### Form Structure and Using the Form

The Form is structured to collect information, data and documentation from the Applicant in order for Staff to evaluate the Application against the standards for admission contained in NASD Rule 1014. The Form requests that information be provided in formats including narrative text, fields that require a selection or mouse-click (e.g., drop-down lists, radio buttons), data entered directly into the Form, information entered into tables in the Form or connected to the Form, and attachments of supporting documents.

ACLP-Inpellis- 0014087

The Form is designed to leverage, where possible, certain information provided by the Applicant to FINRA through means other than the Form itself, in particular, information submitted via the Central Registration Depository (CRD®). In instances where information from other sources are leveraged, if any such information presented to the Applicant in the Form is inaccurate, an Applicant must update the source system before ultimately submitting or amending the Form CMA. (Typically it takes one business day after updating the source system for Form CMA to reflect such changes.)

| Mandatory Information |
| --- |

Certain aspects of the Form are indicated with a red asterisk ( * ), indicating that such aspect (e.g., question, data field, information, document request) of the Form is a required field. A system completeness check is conducted on every Form CMA attempted to be submitted to FINRA. Any Form CMA that fails to address each of the required fields will not be permitted to proceed with submission. Failure to address required fields will, when attempting to submit the Form, result in identification of the missing or unanswered information to the Applicant, who will be responsible for addressing the missing information before attempting to resubmit the Application.

While certain aspects of the Form are indicated as required, Applicants are strongly encouraged to address any optional information fields of the Form that are applicable to the Applicant's proposed change.

| Terms Used in the Form |
| --- |

Unless otherwise stated, the terms used in this Form (e.g., "Applicant," "Associated Person") have the same definition as prescribed in NASD Rule 1011. Additionally, the Form makes certain references that should be construed in a consistent manner. Please note the following references have the meaning prescribed here:

"Associated Person" has the meaning prescribed to such term in NASD Rule 1011(b).

"CRD system" means the Central Registration Depository, the central licensing and registration system for the U.S. securities industry and its regulators.

"SEA" means the Securities Exchange Act of 1934.

"SEA Rule" means a rule promulgated under the SEA.

| Saving the Form Prior to Submission |
| --- |

An Applicant may review, enter, and otherwise prepare Form CMA and save the most recent version of the Form prior to submitting the Application for review by Staff. The Form need not be fully prepared or completed in order to be saved. The most recent saved version of a draft Form CMA is retained on FINRA's electronic filing platform until a final version is submitted to FINRA.

| Submitting the Form |
| --- |

After completing the Form CMA, an Applicant must submit the Form for review by Staff. An electronic completeness check is run on the Form CMA upon attempting submission to determine whether all required fields have been addressed. Upon successfully passing the electronic completeness check, the Form is routed to Staff for a determination of whether the Application is substantially complete. If determined to be substantially complete, the Application will be assigned for continuing review. After submission, an Applicant will be able to view its submitted Form CMA via FINRA's electronic filing system.

| Maintaining the Accuracy of the Application |
| --- |

Each Applicant with FINRA must, at all times, ensure the accuracy of its Application. The Applicant is responsible for keeping its Application current and accurate throughout the Application review process. The Applicant must amend or otherwise notify Staff of any information in, or any information omitted from, its Application that is or makes the Application inaccurate, incomplete or misleading.

**Application type**

# Continuing Member Application

| **Type of Continuing Membership Application** |
| --- |
| Identify the type of change that is contemplated (select all that apply). |

| Ownership or asset transfer changes |
| --- |

☐ Merger of the member with another member

☐ Direct or indirect acquisition by the member of another member

☐ Direct or indirect acquisition or transfer of 25% or more in the aggregate of the member's assets or any asset, business or line of operation that generates revenues comprising 25% or more in the aggregate of the member's earnings measured on a rolling 36 month basis

☑ Change in the equity ownership or partnership capital of the member resulting in one person or entity directly or indirectly owning or controlling 25% or more of the equity or partnership capital

ACLP-Inpellis- 0014088

| Change(s) in business operations |
|---|

☑ Material change in business operations

☐ Removal or modification of a membership agreement restriction

☑ Market making, underwriting or acting as a dealer for the first time

☑ Adding a business activity that requires a higher minimum net capital under Securities Exchange Act (SEA) Rule 15c3-1.

☑ Expansion of Associated Persons, offices, or number of markets made

☐ Other

**Applicant contact information**

# Continuing Member Application

| Applicant contact information |
|---|

Provide the following information for the person who will be the primary contact for the Applicant during FINRA's review of the Continuing Membership Application. Note that this is the person to whom FINRA will direct Application related questions and correspondence.

Firm name *    ALEXANDER CAPITAL, L.P.

| Contact person |
|---|

| | |
|---|---|
| First name * | Ross |
| Last name * | Carmel |
| Email address * | rcarmel@srff.com |
| Phone number * | 2129309700 |
| Fax number | |

| Mailing address |
|---|

| | |
|---|---|
| Company name * | Sichenzia Ross Friedman Ference LLP |
| Street address, line 1 * | 61 Broadway |
| Street address, line 2 | 32nd Floor |
| City * | New York |
| State * | NY |
| ZIP Code * | 10006 |

**Standard 1: Overview of the Applicant**

# Continuing Member Application

| Standard 1: Overview of the Applicants |
|---|
| NASD Rule 1014(a)(1): The application and all supporting documents are complete and accurate. |

| Overview of the proposed change |
|---|

1. Provide a complete description of the proposed change, identifying *

ACLP-Inpellis- 0014089

a. the terms and nature of the proposed change,

b. the date the transaction is expected to be completed,

c. the business reason(s) for the change,

d. the financing for the transaction, including the source of funding for the purchase and recapitalization (as applicable), and

e. an overview of the impact(s) (e.g., financial, operational, managerial, supervisory), or lack thereof, to the Applicant as a result of the change.

Nesa Management, LLC ("Nesa") seeks to purchase an additional 75.1% of Alexander Capital, L.P. (the "Firm") from Exitus LLC, resulting in Nesa owning 100% of Alexander Capital L.P. The transaction is expected to be completed 30 days after FINRA approval of the CMA with Nesa paying $50,000 to Exitus LLC. A copy of the purchase agreement is annexed hereto. The source of the funding will be Nesa, with Joseph Amato and Rocco Guidicipetro as the sole members. There will be no change in financial, operational, managerial, or supervisory control as a result of the change of ownership. Nesa's bank statements are attached hereto as evidence of the source of funding. In addition, the Firm intends to develop investment banking as a major business line and will devote substantial resources toward that end. In that regard, the Firm is requesting that it be permitted by its restrictive agreement to act as managing underwriter and selling group member in firm commitment underwritings. The Firm anticipates that it will participate in two or more public offerings per year in the $3,500,000 to $10,000,000 range. In addition, the Firm intends to proprietary trade in these securities so it can exercise the greenshoe option, in order to provide additional price stability to a security issue, by increasing the supply and smoothing out price fluctuations if demand surges. To satisfy net capital requirements and to fund firm commitment underwritings, the Firm may employ temporary subordinated loans and/or subordinated loans and has identified potential lenders for this purpose. A proposed/example temporary subordinated loan is enclosed herewith. The Firm understands that it can employ temporary subordinated loans only three times per year for purposes of satisfying net capital requirements for firm commitment underwritings. Additionally, the current equity holders of the Firm, as well as , Messrs. Guidicipietro, Amato, O'Brien, Carlin, Gazdak, and Feinman, have the capital and have agreed to make additional capital contributions in the future, if necessary. The Firm anticipates that will co-manage many of the firm commitment underwritings it undertakes, and therefore other underwriters will be committing capital to offerings in which the Firm is involved, thereby lessening the capital commitment required by the Firm. In addition, the Firm is seeking to increase its number of registered representatives to 100 associated persons. Currently, the Firm maintains thirteen (13) Associated Persons who maintain a Series 24 and are capable and have experience supervising registered representatives. A copy of the biographies for each General Securities Principal is enclosed herewith. In addition, the Firm currently maintains an office in New York, New York and Staten Island, New York and employs a total of 49 Associated Persons. The New York, New York office is 15,000 square feet and the Staten Island, New York office is 4,000 square feet. Based upon the total square footage, the Firm believes that it can easily accommodate up to 100 registered representatives. If approved, the Firm's total Associated Persons will be one hundred (100) with thirteen (13) being General Securities Principals. Thus, the ratio being approximately seven (7) Associated Persons for every one (1) General Securities Principal. Specifically, FINRA's "rule of thumb" is a member should employee one General Securities Principal per every 10-15 Associated Persons. Under that rule, the Firm could employ 130 to 195 Associated Persons. Thus, the Firm's request to increase its Associated Persons to one hundred (100) is reasonable and will not affect its ability to properly supervise its registered employees.

2. For any persons or entities, including other broker-dealers and investment advisory firms, that will become associated or affiliated with the Applicant, through ownership, employment, or otherwise, as a result of the proposed transaction, please provide the name of the person or entity, describe the relationship such person or entity will have with the Applicant, for any entity describe the business conducted by such entity, and identify whether the Applicant will be conducting business with or on behalf of the person or entity. *

The Firm intends to hire a part-time FinOp, Thomas Hopkins, to assist its current full-time in-house FinOp, Thomas Sullivan as needed, and with respect to the firm commitment underwritings.

**Specify changes in direct ownership.**

Below is a read-only view of the current direct owners of the Applicant (information obtained from the CRD system).

Please click the "Refresh" button to reload the information (from CRD) below.

| Full legal name | CRD ID | Domestic or Foreign Entity, or Individual | Roles | Date role acquired | Ownership percentage | Control person? |
|---|---|---|---|---|---|---|
| GUIDICIPIETRO, ROCCO GERARD | 2489732 | Individual | COO ROP SROP | 04/01/2012 | Less than 5% | Y |
| FEINMAN, ROBERT STEVEN | 205708 | Individual | CEO | 06/01/2014 | Less than 5% | N |
| CRUZ, STALIN ALFREDO | 2503461 | Individual | MSRB PRINCIPAL, ROP CROP, TRADING SUPERVISOR | 04/01/2013 | Less than 5% | N |
| SULLIVAN, THOMAS FRANCIS | 1145000 | Individual | CHIEF FINANCIAL OFFICER/FINOP | 05/01/2014 | Less than 5% | N |
| NESA MANAGEMENT LLC | xxx-xx-7731 | Domestic | PARTNER | 12/01/2013 | 10% but less than 25% | Y |

ACLP-Inpellis- 0014090

| | | | | | | |
|---|---|---|---|---|---|---|
| STACK, TIMOTHY | 1426363 | Individual | CHIEF COMPLIANCE OFFICER | 09/01/2013 | Less than 5% | N |
| EISENBERG, BARRY TODD | 2313107 | Individual | BRANCH MANAGER SUPERVISOR | 09/01/2013 | Less than 5% | N |
| EXITUS LLC | xxx-xx-8816 | Domestic | PARTNER | 05/01/2012 | 75% or more | N |
| OBRIEN, EDWARD IGNATIOUS | 1001911 | Individual | SENIOR VICE PRESIDENT | 03/01/2015 | 5% but less than 10% | Y |
| SPRATT, DAVID ANTHONY | 2555268 | Individual | TRADING SUPERVISOR | 09/01/2013 | Less than 5% | N |
| AMATO, JOSEPH ANTHONY | 2751635 | Individual | PRESIDENT/ ROP CROP | 03/01/2013 | Less than 5% | Y |

Please edit the chart below to describe the proposed changes in the Applicant's direct ownership. (Information provided here will be used solely for the review of this Application and will not update the CRD system).

### 1. Proposed changes in direct ownership

| | | | |
|---|---|---|---|
| CRD ID | 2503461 | Name * | CRUZ, STALIN ALFREDO |

Domestic or Foreign Entity, or Individual    Individual

Roles    MSRB PRINCIPAL, ROP CROP, TRADING SUPERVISOR

Date role acquired    04/01/2013

Ownership percentage    Less than 5%

Control person?    ○ Yes   ● No

Registrations

| Code | Date |
|---|---|
| S24 | 01/24/2000 |
| S4 | 06/05/2000 |
| S53 | 05/07/2001 |
| S55 | 02/27/1999 |
| S63 | 06/24/1994 |
| S7 | 07/28/1994 |

Continuing education *    ● Active ○ Inactive

Will the Applicant claim any registration exemptions for this person? If so, list them.    No

Will the Applicant apply for any waivers of required examinations for this person? If so, list them.    No

Scheduled examinations and dates    NA

4. Provide a description of the duties and responsibilities of any non-registered owners , along with an explanation for why they are not required to register with the Applicant (please refer to the applicable registration provisions, such as NASD Rules 1021, 1022 and 1060, as well as Notice to Members 99-49.). This should include responsibilities performed:

At the Applicant,

At any affiliated companies, and

At any other companies anticipated to conduct business with the Applicant. *

NA

### 2. Proposed changes in direct ownership

| | | | |
|---|---|---|---|
| CRD ID | 205708 | Name * | FEINMAN, ROBERT STEVEN |

Domestic or Foreign Entity, or Individual    Individual

Roles    CEO

Date role acquired    06/01/2014

Ownership percentage    Less than 5%

Control person?    ○ Yes   ● No

Registrations

ACLP-Inpellis- 0014091

FINRA Continuing Membership Application Receipt

| Code | Date |
|------|------|
| PC | 06/13/1977 |
| S1 | 08/26/1974 |
| S15 | 04/03/1986 |
| S24 | 05/30/2001 |
| S3 | 04/27/2007 |
| S5 | 10/17/1981 |
| S63 | 10/18/1984 |
| S65 | 10/11/1996 |
| S8 | 09/21/1984 |

Continuing education *     ◉ Active   ○ Inactive

Will the Applicant claim any registration exemptions for this person? If so, list them.    `No`

Will the Applicant apply for any waivers of required examinations for this person? If so, list them.    `No`

Scheduled examinations and dates    `NA`

4. Provide a description of the duties and responsibilities of any non-registered owners , along with an explanation for why they should not be required to register with the Applicant (please refer to the applicable registration provisions, such as NASD Rules 1021, 1022 and 1060, as well as Notice to Members 99-49.). This should include responsibilities performed:

     At the Applicant,

     At any affiliated companies, and

     At any other companies anticipated to conduct business with the Applicant. *

`NA`

### 3. Proposed changes in direct ownership

CRD ID `1145000`   Name * `SULLIVAN, THOMAS FRANCIS`

Domestic or Foreign Entity, or Individual    `Individual`

Roles    `CHIEF FINANCIAL OFFICER/FINOP`

Date role acquired    `05/01/2014`

Ownership percentage    `Less than 5%`

Control person?    ○ Yes   ◉ No

| Code | Date |
|------|------|
| S10 | 02/06/2001 |
| S14 | 03/01/2001 |
| S24 | 04/25/1995 |
| S24 | 11/14/2011 |
| S27 | 10/26/1995 |
| S27 | 10/26/2011 |
| S4 | 03/25/2005 |
| S4 | 11/30/2011 |
| S53 | 10/29/2004 |
| S53 | 12/19/2011 |
| S55 | 01/18/2002 |
| S63 | 03/23/1994 |
| S7 | 06/21/1986 |
| S7 | 03/03/1994 |
| S7 | 09/27/2011 |
| S9 | 01/17/2001 |
| S66 | 01/30/2015 |

Registrations

Continuing education *     ◉ Active   ○ Inactive

Will the Applicant claim any registration exemptions for this person? If so, list them.    `No`

Will the Applicant apply for any waivers of required examinations for this person? If so, list them.    `No`

ACLP-Inpellis- 0014092

Scheduled examinations and dates　　NA

4. Provide a description of the duties and responsibilities of any non-registered owners , along with an explanation for why they should not be required to register with the Applicant (please refer to the applicable registration provisions, such as NASD Rules 1021, 1022 and 1060, as well as Notice to Members 99-49.). This should include responsibilities performed:

　　At the Applicant,

　　At any affiliated companies, and

　　At any other companies anticipated to conduct business with the Applicant. *

NA

#### 4. Proposed changes in direct ownership

CRD ID　xxx-xx-7731　　Name *　NESA MANAGEMENT LLC

Domestic or Foreign Entity, or Individual　　Domestic Entity

Roles　　PARTNER

Date role acquired　　12/01/2013

Ownership percentage　　10% but less than 25%

Control person?　　○ Yes ● No

Registrations　　**Code** **Date**

Continuing education *　　○ Active ● Inactive

Will the Applicant claim any registration exemptions for this person? If so, list them.　No it's a limited liability company

Will the Applicant apply for any waivers of required examinations for this person? If so, list them.　No

Scheduled examinations and dates　　None

4. Provide a description of the duties and responsibilities of any non-registered owners , along with an explanation for why they should not be required to register with the Applicant (please refer to the applicable registration provisions, such as NASD Rules 1021, 1022 and 1060, as well as Notice to Members 99-49.). This should include responsibilities performed:

　　At the Applicant,

　　At any affiliated companies, and

　　At any other companies anticipated to conduct business with the Applicant. *

Nesa Management LLC will have no duties or responsibilities over the applicant. No other companies are anticipated to conduct business with the applicant.

#### 5. Proposed changes in direct ownership

CRD ID　1426363　　Name *　STACK, TIMOTHY

Domestic or Foreign Entity, or Individual　　Individual

Roles　　CHIEF COMPLIANCE OFFICER

Date role acquired　　09/01/2013

Ownership percentage　　Less than 5%

Control person?　　○ Yes ● No

Registrations

| Code | Date |
| --- | --- |
| S24 | 08/16/2004 |
| S55 | 04/17/2000 |
| S63 | 10/15/1987 |
| S7 | 07/19/1986 |

Continuing education *　　● Active ○ Inactive

Will the Applicant claim any registration exemptions for this person? If so, list them.　No

ACLP-Inpellis- 0014093

| | |
|---|---|
| Will the Applicant apply for any waivers of required examinations for this person? If so, list them. | No |
| Scheduled examinations and dates | NA |

4. Provide a description of the duties and responsibilities of any non-registered owners , along with an explanation for why they should not be required to register with the Applicant (please refer to the applicable registration provisions, such as NASD Rules 1021, 1022 and 1060, as well as Notice to Members 99-49.). This should include responsibilities performed:

    At the Applicant,

    At any affiliated companies, and

    At any other companies anticipated to conduct business with the Applicant. *

NA

## 6. Proposed changes in direct ownership

| | | | |
|---|---|---|---|
| CRD ID | 2313107 | Name * | EISENBERG, BARRY TODD |
| Domestic or Foreign Entity, or Individual | | | Individual |
| Roles | | | BRANCH MANAGER SUPERVISOR |
| Date role acquired | | | 09/01/2013 |
| Ownership percentage | | | Less than 5% |
| Control person? | | | ○ Yes  ◉ No |

Registrations

| Code | Date |
|---|---|
| S24 | 12/02/1996 |
| S63 | 03/22/1993 |
| S7 | 03/16/1993 |

| | |
|---|---|
| Continuing education * | ◉ Active  ○ Inactive |
| Will the Applicant claim any registration exemptions for this person? If so, list them. | No |
| Will the Applicant apply for any waivers of required examinations for this person? If so, list them. | No |
| Scheduled examinations and dates | NA |

4. Provide a description of the duties and responsibilities of any non-registered owners , along with an explanation for why they should not be required to register with the Applicant (please refer to the applicable registration provisions, such as NASD Rules 1021, 1022 and 1060, as well as Notice to Members 99-49.). This should include responsibilities performed:

    At the Applicant,

    At any affiliated companies, and

    At any other companies anticipated to conduct business with the Applicant. *

NA

## 7. Proposed changes in direct ownership

| | | | |
|---|---|---|---|
| CRD ID | 2489732 | Name * | GUIDICIPIETRO, ROCCO GERARD |
| Domestic or Foreign Entity, or Individual | | | Individual |
| Roles | | | COO ROP SROP |
| Date role acquired | | | 04/01/2012 |
| Ownership percentage | | | Less than 5% |
| Control person? | | | ◉ Yes  ○ No |

Registrations

| Code | Date |
|---|---|
| S24 | 03/04/1997 |
| S4 | 11/30/1998 |
| S63 | 06/13/1994 |

ACLP-Inpellis- 0014094

|     |            |
| --- | ---------- |
| S65 | 10/20/1999 |
| S7  | 06/06/1994 |
| S8  | 09/22/1999 |

Continuing education *     ● Active ○ Inactive

Will the Applicant claim any registration exemptions for this person? If so, list them.    `No`

Will the Applicant apply for any waivers of required examinations for this person? If so, list them.    `No`

Scheduled examinations and dates    `None`

4. Provide a description of the duties and responsibilities of any non-registered owners , along with an explanation for why they should not be required to register with the Applicant (please refer to the applicable registration provisions, such as NASD Rules 1021, 1022 and 1060, as well as Notice to Members 99-49.). This should include responsibilities performed:

     At the Applicant,

     At any affiliated companies, and

     At any other companies anticipated to conduct business with the Applicant. *

`NA`

### 8. Proposed changes in direct ownership

CRD ID `1001911`    Name * `OBRIEN, EDWARD IGNATIOUS`

Domestic or Foreign Entity, or Individual    `Individual`

Roles    `SENIOR VICE PRESIDENT`

Date role acquired    `03/01/2015`

Ownership percentage    `5% but less than 10%`

Control person?     ○ Yes ● No

| Code | Date       |
| ---- | ---------- |
| S24  | 03/24/1997 |
| S53  | 04/23/2008 |
| S63  | 08/16/1994 |
| S7   | 08/15/1981 |

Registrations (as above)

Continuing education *     ● Active ○ Inactive

Will the Applicant claim any registration exemptions for this person? If so, list them.    `No`

Will the Applicant apply for any waivers of required examinations for this person? If so, list them.    `No`

Scheduled examinations and dates    `NA`

4. Provide a description of the duties and responsibilities of any non-registered owners , along with an explanation for why they should not be required to register with the Applicant (please refer to the applicable registration provisions, such as NASD Rules 1021, 1022 and 1060, as well as Notice to Members 99-49.). This should include responsibilities performed:

     At the Applicant,

     At any affiliated companies, and

     At any other companies anticipated to conduct business with the Applicant. *

`NA`

### 9. Proposed changes in direct ownership

CRD ID `2555268`    Name * `SPRATT, DAVID ANTHONY`

Domestic or Foreign Entity, or Individual    `Individual`

Roles    `TRADING SUPERVISOR`

Date role acquired    `09/01/2013`

ACLP-Inpellis- 0014095

| Ownership percentage | Less than 5% |
|---|---|

Control person?    ○ Yes  ● No

| Code | Date |
|---|---|
| S24 | 05/17/2002 |
| S24 | 06/17/2013 |
| S55 | 10/15/1998 |
| S63 | 07/26/1996 |
| S7 | 07/22/1996 |

Registrations (applies to table above)

Continuing education *    ● Active ○ Inactive

| Will the Applicant claim any registration exemptions for this person? If so, list them. | No |
|---|---|

| Will the Applicant apply for any waivers of required examinations for this person? If so, list them. | No |
|---|---|

| Scheduled examinations and dates | NA |
|---|---|

4. Provide a description of the duties and responsibilities of any non-registered owners , along with an explanation for why they should not be required to register with the Applicant (please refer to the applicable registration provisions, such as NASD Rules 1021, 1022 and 1060, as well as Notice to Members 99-49.). This should include responsibilities performed:

    At the Applicant,

    At any affiliated companies, and

    At any other companies anticipated to conduct business with the Applicant. *

| NA |
|---|

### 10. Proposed changes in direct ownership

| CRD ID | 2751635 | Name * | AMATO, JOSEPH ANTHONY |
|---|---|---|---|

| Domestic or Foreign Entity, or Individual | Individual |
|---|---|

| Roles | PRESIDENT/ ROP CROP |
|---|---|

| Date role acquired | 03/01/2013 |
|---|---|

| Ownership percentage | Less than 5% |
|---|---|

Control person?    ● Yes ○ No

| Code | Date |
|---|---|
| S10 | 11/18/2002 |
| S24 | 03/21/2006 |
| S31 | 10/15/1997 |
| S4 | 02/08/2007 |
| S63 | 09/30/1997 |
| S65 | 10/21/1997 |
| S7 | 09/17/1997 |
| S9 | 10/14/2002 |

Registrations (applies to table above)

Continuing education *    ● Active ○ Inactive

| Will the Applicant claim any registration exemptions for this person? If so, list them. | No |
|---|---|

| Will the Applicant apply for any waivers of required examinations for this person? If so, list them. | No |
|---|---|

| Scheduled examinations and dates | None |
|---|---|

4. Provide a description of the duties and responsibilities of any non-registered owners , along with an explanation for why they should not be required to register with the Applicant (please refer to the applicable registration provisions, such as NASD Rules 1021, 1022 and 1060, as well as Notice to Members 99-49.). This should include responsibilities performed:

    At the Applicant,

    At any affiliated companies, and

ACLP-Inpellis- 0014096

At any other companies anticipated to conduct business with the Applicant. *

NA

---

**Specify changes in __indirect__ ownership.**

Below is a read-only view of the current indirect owners of the Applicant (information obtained from the CRD system).

Please click the "Refresh" button to reload the information (from CRD) below.

| Full legal name | Domestic or Foreign Entity, or Individual | Entity in which interest is owned | Roles | Date role acquired | Ownership percentage | Control person? | CRD ID, EIN, IRS # |
|---|---|---|---|---|---|---|---|
| FIGLIOLO, JOSEPH | Individual | EXITUS, LLC | PARTNER | 05/01/2012 | 75% or more | N | 6116157 |
| GUIDICIPIETRO, ROCCO GERARD | Individual | NESA MANAGEMENT LLC | BENEFICIAL OWNER | 09/01/2012 | 50% but less than 75% | Y | 2489732 |
| AMATO, JOSEPH ANTHONY | Individual | NESA MANAGEMENT LLC | BENEFICIAL OWNER | 09/01/2012 | 50% but less than 75% | Y | 2751635 |

Please edit the chart below to describe the proposed changes in the Applicant's indirect ownership. (Information provided here will be used solely for the review of this Application and will __not__ update the CRD system).

### 1. Proposed changes in indirect ownership

| | | | |
|---|---|---|---|
| CRD ID | 2489732 | Name * | GUIDICIPIETRO, ROCCO GERARD |

Domestic or Foreign Entity, or Individual    Individual

Entity in which interest is owned    NESA MANAGEMENT LLC

Roles    BENEFICIAL OWNER

Date role acquired    09/01/2012

Ownership percentage    50% but less than 75%

Control person?    ⊙ Yes ○ No

### 2. Proposed changes in indirect ownership

| | | | |
|---|---|---|---|
| CRD ID | 2751635 | Name * | AMATO, JOSEPH ANTHONY |

Domestic or Foreign Entity, or Individual    Individual

Entity in which interest is owned    NESA MANAGEMENT LLC

Roles    BENEFICIAL OWNER

Date role acquired    09/01/2012

Ownership percentage    50% but less than 75%

Control person?    ⊙ Yes ○ No

---

**Provide supporting documents.**

1. Pre- and post-change business organizational charts, identifying the Applicant's owners and affiliated entities (indicate all direct and indirect owners of the Applicant and percentage of ownership for each) *

[Post CMA ORGANIZATIONAL CHART.docx 30415 bytes](#)

[ACLP Supervisory Chart 6.2.15 - rc2.docx 21037 bytes](#)

[ACLP Supervisory Chart - Post Additional Registered Reps - rc3.docx 20186 bytes](#)

[Pre-Change ORGANIZATIONAL CHART.docx 29737 bytes](#)

[Organization - Supervision ChartII.DOCX 25968 bytes](#)

ACLP-Inpellis- 0014097

2. Any modified formation documents of the Applicant stemming from the change *

[ACLP Supervisory Chart - Post Additional Registered Reps - rc3.docx 20186 bytes](#)

[ACLP Supervisory Chart 6.2.15 - rc2.docx 21037 bytes](#)

[Organization - Supervision ChartII.DOCX 25968 bytes](#)

3. Formation documents for any entities (e.g., corporations, partnership, trusts), including holding companies, that are or will be new owners, directly or indirectly, of the Applicant *

[ARTICLES OF ORGANIZATION.pdf 1610843 bytes](#)

4. As applicable, if this Application is filed on behalf of multiple firms: a signed statement, from a principal officer of each Applicant, indicating this Application is being filed on the firm's behalf

5. Any other documentation that would be pertinent to FINRA's review of this Standard

[MARCHStatementPdf - Ch.pdf 47060 bytes](#)

[MARCHStatementPdf.pdf 99722 bytes](#)

[FEBStatementPdf - ch.pdf 47060 bytes](#)

[FEBStatementPdf.pdf 93977 bytes](#)

[APRILStatementPdf - Sav.pdf 94727 bytes](#)

[StatementPdf.pdf 50575 bytes](#)

[FOCUS REPORT FILED 04.22.2015.pdf 39083 bytes](#)

Please click the "Refresh" button to reload the information (from CRD) below.

| Verify current business activities. |
| --- |

The business lines noted below have been obtained from information submitted to the CRD system by the Applicant. Please verify the business activities of the Applicant, selecting the appropriate status for each business line. If the Applicant's contemplated change in business operations for which this Form CMA is being filed relates to one of these business lines, select "Change" for the respective business line and answer the required questions.

(Note that any changes to business lines indicated here will not automatically flow to the Form BD; they are captured here solely for the CMA process. Upon completion of the CMA process, Applicants must update Form BD appropriately.)

Equity Securities (BDR, BIA, NEX)

**BDR**  Broker or dealer retailing corporate equity securities over-the-counter *

    ⦿ No change ◯ Change ◯ Remove

**NEX**  Non-exchange member effecting transactions in listed securities through exchange member *

    ⦿ No change ◯ Change ◯ Remove

Corporate Debt (BDD)

**BDD**  Broker or dealer selling corporate debt securities *

    ⦿ No change ◯ Change ◯ Remove

Underwriter or Selling Group Member (USG, RES)

**USG**  Underwriter or selling group participant (corporate securities other than mutual funds) *

    ◯ No change ⦿ Change ◯ Remove

ACLP-Inpellis- 0014098

1. Provide a written narrative describing the scope of activities to be conducted as well as describing each step of a typical transaction to be conducted by the Applicant, beginning with any initial customer contact. *

*Note that this description should be independent of trading or other platforms. Those platforms are addressed in Standard 6.*

The Firm and its counsel will undertake vigorous due diligence to verify the accuracy of information contained in all registration statements in which it participates. In all financing transactions the Firm will perform due diligence trips to the issuer's headquarters. The Firm will interview all management of the issuer as well as selected support staff and will conduct background searches for the principals of the issuer. Additionally, the Firm requires that each officer, director and 5% stockholder of the issuer complete a questionnaire. Example D&O questionnaire, due diligence request, bring down questions, and time and responsibility checklist are enclosed. If the Firm and issuer reach an agreement to do an underwriting, then the Firm will buy the new securities for an agreed price, and resell the securities to the public at a markup, bearing all of the expenses associated with the sale. The Firm's responsibilities in an underwriting may include registering the new securities with the Securities and Exchange Commission, setting the offering price, possibly forming and managing a syndicate to help sell the new securities, and to peg the price of the new issue by buying in the open market, if necessary. Examples of the due diligence questions, bring down questions, D&O questionnaire and time and responsibility checklists are enclosed herewith. The Firm will receive indications of interest for each offering by circulating two sets of "red herring" prospectuses prior to the effective date of the offering. In order to minimized risk, the Firm will only sign the underwriting agreement on the effective date and at that time will already know the the relative strength of the deal. If the Firm signs the underwriting agreement, the deal will be placed according to the interest expressed by the customers based on circulation of the "red herrings." If there is any indication that the deal could not be placed, the underwriting agreement will not be executed and capital will not be put at risk. After the deal is priced, the registered representative will again confirm the customers interest and then allocate the shares accordingly. It is important to note that since 2014 the Firm has successfully participated in 4 best efforts public offerings and 7 private placements. This experience has provided with Firm as a whole with the experience necessary to conduct firm commitment underwritings.

2. Provide a detailed description of how a typical transaction will be settled and cleared including handling of funds and securities. Be sure to indicate what, if any, exemption to SEA Rule 15c3-3 will be claimed. *

The Firm, as an introducing broker or dealer, clears all transactions with and for customers on a fully disclosed basis with its clearing firm, RBC Capital Markets, LLC, and who promptly transmits all customer funds and securities to the clearing broker or dealer which carries all of the accounts of such customers and maintains and preserves such books and records pertaining thereto, as are customarily made and kept by a clearing broker or dealer. The Firm will be relying on the exemption set forth in SEA Rule 15c3-3 (k)(2)(ii).

3. Provide a statement describing how the Applicant and its Associated Persons (registered and unregistered) will be compensated for the proposed activities. *

The Firm will buy the new securities for an agreed price, and resell the securities to the public at a markup, bearing all of the expenses associated with the sale. The Firm's Associated Persons who place the security and will then receive a commission, depending upon the specific individual's payout percentage of the markup charged.

Please describe any changes unique to the USG business line.

[ ]

Mutual Funds, Variable Products (MFU, MFR, VLA)

**MFR**   Mutual fund retailer *
   ⦿ No change   ◯ Change   ◯ Remove

**VLA**   Broker or dealer selling variable life insurance or annuities *
   ⦿ No change   ◯ Change   ◯ Remove

Government and Municipal Debt (GSD, GSB, MSD, MSB)

**GSB**   U.S. government securities broker *
   ⦿ No change   ◯ Change   ◯ Remove

ACLP-Inpellis- 0014099

**MSB**   Municipal securities broker *

      ⦿ No change ◯ Change ◯ Remove

<u>Private Placements/Private Offerings (OGI, NPB, TAP, TAS, PLA)</u>

**TAP**   Broker or dealer selling tax shelters or limited partnerships in primary distributions *

      ⦿ No change ◯ Change ◯ Remove

**PLA**   Private Placement of securities *

      ⦿ No change ◯ Change ◯ Remove

<u>Options (PCB)</u>

**PCB**   Options broker or dealer or option writer *

      ⦿ No change ◯ Change ◯ Remove

<u>Other (SSL, IAD, MRI, OTH)</u>

**IAD**   Investment advisory services *

      ⦿ No change ◯ Change ◯ Remove

---

**Indicate which business lines are being added.**

---

Please select the business activities in which the Applicant intends to engage as a result of the change.

(Note that any changes to business lines indicated here will <u>not</u> automatically flow to the Form BD; they are captured here solely for the CMA process. Upon completion of the CMA process, Applicants must update Form BD appropriately.)

<u>Exchange Member Activities (EMC, EMF)</u>

☐   **EMC**   Exchange member engaged in exchange commission business other than floor activities

☐   **EMF**   Exchange member engaged in floor activities

<u>Trading and Market Making (IDM, TRA)</u>

☐   **IDM**   Broker or dealer making inter-dealer markets in corporate securities over-the-counter

☑   **TRA**   Trading securities for own account

Across <u>all</u> business lines within this category:

    1. Provide a written narrative describing the scope of activities to be conducted as well as describing each step of a typical transaction to be conducted by the Applicant, beginning with any initial customer contact. *

    *Note that this description should be independent of trading or other platforms. Those platforms are addressed in Standard 6.*

ACLP-Inpellis- 0014100

FINRA Continuing Membership Application Receipt

> The Firm intends on proprietary trading in the securities in which it may act as an underwriter. Specifically, the Firm intends on entering stabilizing bids for the offerings in which it participates. The Firm intends on exercising the greenshoe option in order to provide additional price stability to a security issue, by increasing the supply and smoothing out price fluctuations if demand surges.

2. Provide a detailed description of how a typical transaction will be settled and cleared, including handling of funds and securities. Be sure to indicate what, if any, exemption to SEA Rule 15c3-3 will be claimed. *

> The Firm, as an introducing broker or dealer, clears all transactions with and for customers on a fully disclosed basis with its clearing firm, RBC Capital Markets, LLC, and who promptly transmits all customer funds and securities to the clearing broker or dealer which carries all of the accounts of such customers and maintains and preserves such books and records pertaining thereto, as are customarily made and kept by a clearing broker or dealer. The Firm will be relying on the exemption set forth in SEA Rule 15c3-3 (k)(2)(ii).

3. Provide a statement describing how the Applicant and its Associated Persons (registered and unregistered) will be compensated for the proposed activities. *

> The Firm will not receive any consideration from the issuer or any promoters with regards to its proprietary trading and will not be compensated for same.

4. Provide additional details regarding the noted business line(s), including, as applicable, the Applicant's plans to distribute or maintain securities products in proprietary positions, and the risks, volatility, degree of liquidity, speculative nature and type of the products; the number of markets to be made; the type and volatility of the products; and the anticipated maximum inventory positions. *

> Applicant intends on proprietary trading in the securities in which it may act as an underwriter only. Specifically, Alexander intends on entering stabilizing bids for the offerings in which it participates. The Firm intends on exercising the greenshoe option in order to provide additional price stability to a security issue, by increasing the supply and smoothing out price fluctuations if demand surges.

Equity Securities (BDR, BIA, NEX)

☐ **BIA**   Broker or dealer selling securities of only one issuer or associated issuers (other than mutual funds)

Underwriter or Selling Group Member (USG, RES)

☐ **RES**   Seller of real estate securities

Mutual Funds, Variable Products (MFU, MFR, VLA)

☐ **MFU**   Mutual fund underwriter or sponsor

Government and Municipal Debt (GSD, GSB, MSD, MSB)

☐ **GSD**   U.S. government securities dealer

☐ **MSD**   Municipal securities dealer

Private Placements/Private Offerings (OGI, NPB, TAP, TAS, PLA)

☐ **OGI**   Broker or dealer selling oil and gas interests

ACLP-Inpellis- 0014101

☐ **NPB** Broker or dealer selling securities of non-profit organizations (e.g., churches, hospitals)

☐ **TAS** Broker or dealer selling tax shelters or limited partnerships in the secondary market

Networking Arrangements (BNA, INA)

☐ **BNA** Broker or dealer involved in networking, kiosk, or similar arrangement with a bank, savings bank, or association, or credit union

☐ **INA** Broker or dealer involved in networking, kiosk or similar arrangement with an insurance company or agency

Other (SSL, IAD, MRI, OTH)

☐ **SSL** Solicitor of time deposits in a financial institution

☐ **MRI** Broker or dealer selling interests in mortgages, receivables or other asset-backed securities

☐ **OTH** Other (description from Form BD is below)

☐ Broker or dealer that offers or engages in on-line trading / electronic trading

☐ Broker or dealer selling securities futures products

☐ Broker or dealer selling interests in unregistered private investment funds

☐ Underwriter of municipal securities

☐ Securities clearance and settlement

☐ Prime brokerage services

☐ Securities lending

☐ Research and/or soft dollar activities

☐ Repurchase/ reverse repurchase transactions

☐ Operation of alternative trading systems, including electronic communications network

☐ Mergers and acquisitions

ACLP-Inpellis- 0014102

☐ Other

| Specify supervisors for new business lines |
|---|

Please enter individual CRD IDs for registered persons who will be supervising the proposed new business lines.

Note that this information is solely for purposes of the CMA review: any association of individuals with this Form CMA will not flow through to the CRD system.

2489732

### 1. Business Line Supervisors

CRD ID  5678294　　　Name  GAZDAK, JONATHAN

Roles *  Investment Banking Principal

Intended exams *  None

What business activities (if any) will be supervised by this person? *  Firm Commitment Underwriting

Registrations

| Code | Date |
|---|---|
| S63 | 05/25/2011 |
| S79 | 09/15/2010 |
| S24 | 04/08/2014 |

Continuing education *  ⦿ Active ◯ Inactive

Will the Applicant claim any registration exemptions for this person? If so, list them.  No

Will the Applicant apply for any waivers of required examinations for this person? If so, list them.  No

Scheduled examinations and dates  NA

### 2. Business Line Supervisors

CRD ID  2555268　　　Name  SPRATT, DAVID

Roles *  Trader

Intended exams *  None

What business activities (if any) will be supervised by this person? *  Proprietary Trading

Registrations

| Code | Date |
|---|---|
| S24 | 05/17/2002 |
| S24 | 06/17/2013 |
| S55 | 10/15/1998 |
| S63 | 07/26/1996 |
| S7 | 07/22/1996 |

Continuing education *  ⦿ Active ◯ Inactive

Will the Applicant claim any registration exemptions for this person? If so, list them.  No

Will the Applicant apply for any waivers of required examinations for this person? If so, list them.  No

Scheduled examinations and dates  NA

### 3. Business Line Supervisors

CRD ID  205708　　　Name  FEINMAN, ROBERT

Roles *  Chief Executive Officer

Intended exams *  None

What business activities (if any) will be supervised by this person? *  Investment Banking

ACLP-Inpellis- 0014103

Registrations

| Code | Date |
|------|------|
| PC | 06/13/1977 |
| S1 | 08/26/1974 |
| S15 | 04/03/1986 |
| S24 | 05/30/2001 |
| S3 | 04/27/2007 |
| S5 | 10/17/1981 |
| S63 | 10/18/1984 |
| S65 | 10/11/1996 |
| S8 | 09/21/1984 |

Continuing education *　　　　　　　　　　● Active ○ Inactive

Will the Applicant claim any registration exemptions for this person? If so, list them.　　`No`

Will the Applicant apply for any waivers of required examinations for this person? If so, list them.　　`No`

Scheduled examinations and dates　　`NA`

---

**Specify other persons associated with this change.**

Please provide information on other persons associated with this change. This includes registered persons and other associated persons.

Please download this spreadsheet and complete all fields. Do not change the structure of the spreadsheet; it will be automatically loaded into FINRA systems.

Upload the completed spreadsheet:

Standard 1 - Other persons Associated with this change -rc2.xlsx 9109 bytes

---

**Provide supporting documents.**

1. For all transactions to be conducted by the Applicant that will not involve a clearing firm: a graphical depiction of the steps involved in the transactions, including but not limited to order receipt, execution, and clearance and settlement

2. Any other documentation that would be pertinent to FINRA's review of this Standard

3-26-15 Alexander Capital LP WSPs.pdf 3512277 bytes

Alexander Due Diligence (Tech).docx 155253 bytes

SilverSun Bring-down Questions.docx 30566 bytes

SSNT - D&O Questionnaire (2014-2015).doc 196096 bytes

Time and Responsibility Checklist.docx 109860 bytes

Alexander_wsp_Underwriting_Market Making.pdf 1269762 bytes

Christopher Carlin Bio.docx 13272 bytes

**Standard 2: Licenses and registrations**

# Continuing Member Application

---

### Standard 2: Licenses and registrations

NASD Rule 1014(a)(2): The Applicant and its Associated Persons have all licenses and registrations required by state and federal authorities and self-regulatory organizations.

---

The Applicant is reminded that failure of its Associated Persons to schedule and successfully complete any required qualification examinations in a timely manner may result in a significant delay of the Application review process, or a lapse or denial of the Application. It is strongly suggested that any qualification examination(s) be completed in advance of the filing of the Form CMA where possible or be scheduled within the first 30 days of filing Form CMA, and that all registration requirements be completed within the first 60 days of filing Form CMA to avoid delays in processing of the Application.

---

**Provide information regarding direct owners**

ACLP-Inpellis- 0014104

The list of direct owners below is repeated from the Applicant's input in Standard 1 above. If the information displayed is incomplete or inaccurate, please edit Standard 1 before completing this section of the Form.

Please provide the information below for all direct owners who will have an ownership stake in the Applicant after the proposed change.

| CRD ID | Name | Continuing education |
|--------|------|---------------------|
| 2503461 | CRUZ, STALIN ALFREDO | Active |
| 205708 | FEINMAN, ROBERT STEVEN | Active |
| 1145000 | SULLIVAN, THOMAS FRANCIS | Active |
| xxx-xx-7731 | NESA MANAGEMENT LLC | Inactive |
| 1426363 | STACK, TIMOTHY | Active |
| 2313107 | EISENBERG, BARRY TODD | Active |
| 2489732 | GUIDICIPIETRO, ROCCO GERARD | Active |
| 1001911 | OBRIEN, EDWARD IGNATIOUS | Active |
| 2555268 | SPRATT, DAVID ANTHONY | Active |
| 2751635 | AMATO, JOSEPH ANTHONY | Active |

---

**Provide information about the Applicant following the proposed change**

1. Does the Applicant anticipate being registered with or withdrawing registration from any other regulatory or self-regulatory organization(s) and/or state(s) as a result of the change? *

◯ Yes ◉ No

> Each Applicant, except a sole proprietorship, is required to have a minimum of two registered principals with respect to each aspect of its investment banking and securities business. Pursuant to the FINRA Rule 9600 Series, FINRA may waive the requirement in situations that indicate conclusively that only one person associated with an Applicant should be required to register as a principal. Each Applicant must also have a Financial and Operations (FinOp) Principal (or Introducing Broker-Dealer FinOp Principal, as applicable). Additionally, an Applicant engaged in certain activities must have other appropriately registered principals (for example, an Applicant that will be engaged in options transactions with the public must have a Registered Options Principal). Please refer to NASD Rules 1021 (Registration Requirements) and 1022 (Categories of Principal Registration) for the appropriate categories of principal registration.

2. Is the Applicant seeking a waiver, or seeking to maintain a waiver already in place, of the two principal requirement under NASD 1021? *

◯ Yes ◉ No

3. Will the Applicant have any non-registered officers, directors, or control persons following the change? *

◯ Yes ◉ No

---

**Provide supporting documents.**

1. Management organizational chart, identifying officers, principals and supervisors of the Applicant and the proposed business activities and/or product lines supervised by each person following the change *

[ACLP Supervisory Chart - Post Additional Registered Reps - rc3.docx 20186 bytes](#)

[ACLP Supervisory Chart 6.2.15 - rc2.docx 21037 bytes](#)

[Organization - Supervision ChartII.DOCX 25968 bytes](#)

2. An attestation for officers, directors, owners and control persons who will not participate in the day-to-day securities or investment banking operations of the Applicant or act in any capacity that would require that these individuals become registered

3. Any other documentation that would be pertinent to FINRA's review of this Standard

---

**Provide specific information regarding supervisors.**

The list of personnel below is repeated from the Applicant's input in Standard 1 above. If the information listed is inaccurate or incomplete, please edit Standard 1 before completing this section of the Form.

| CRD ID | Name | Continuing education |
|--------|------|---------------------|
| 5678294 | GAZDAK, JONATHAN | Active |
| 2555268 | SPRATT, DAVID | Active |
| 205708 | FEINMAN, ROBERT | Active |

ACLP-Inpellis- 0014105

1. Does the Applicant anticipate being registered with or withdrawing registration from any other regulatory or self-regulatory organization(s) and/or state(s) as a result of the change? *

○ Yes ● No

2. Does the Applicant anticipate being exempt from registration with the Securities Information Center, pursuant to SEA Rule 17f-1, following implementation of the proposed change? *

○ Yes ● No

---

**Provide supporting documents.**

1. For the Applicant:

     a. Options allocation form (if applicable)

     b. Lost and stolen securities registration (if applicable)

     c. Evidence of registration with MSRB (if applicable)

2. For personnel:

     a. A management organizational chart, identifying officers, principals, and supervisors of the Applicant and the proposed business activities and/or product lines supervised by each person following the proposed change *

     [ACLP Supervisory Chart - Post Additional Registered Reps - rc3.docx 20186 bytes](#)

     [ACLP Supervisory Chart 6.2.15 - rc2.docx 21037 bytes](#)

     [Organization - Supervision ChartII.DOCX 25968 bytes](#)

3. Any other documentation that would be pertinent to FINRA's review of this Standard

**Standard 3: Compliance with securities laws, just and equitable principles of trade**

# Continuing Member Application

---

### Standard 3: Compliance with securities laws, just and equitable principles of trade

NASD Rule 1014(a)(3): The Applicant and its Associated Persons are capable of complying with the federal securities laws, the rules and regulations thereunder, and FINRA Rules, including observing high standards of commercial honor and just and equitable principles of trade. In determining whether this standard is met, the Department shall take into consideration whether:

---

In determining whether this standard is met, the Department shall take into consideration whether:

A. a state or federal authority or self-regulatory organization has taken permanent or temporary adverse action with respect to a registration or licensing determination regarding the Applicant or an Associated Person;

B. an Applicant's or Associated Person's record reflects a sales practice event, a pending arbitration, or a pending private civil action;

C. an Applicant or Associated Person is the subject of a pending, adjudicated, or settled regulatory action or investigation by the Commission, the Commodity Futures Trading Commission, a federal, state, or foreign regulatory agency, or a self-regulatory organization; an adjudicated, or settled investment-related private civil action for damages or an injunction; or a criminal action (other than a minor traffic violation) that is pending, adjudicated, or that has resulted in a guilty or no contest plea or an Applicant, its control persons, principals, registered representatives, other Associated Persons, any lender of 5% or more of the Applicant's net capital, and any other member with respect to which these persons were a control person or a 5% lender of its net capital is subject to unpaid arbitration awards, other adjudicated customer awards, or unpaid arbitration settlements;

D. an Associated Person was terminated for cause or permitted to resign after an investigation of an alleged violation of a federal or state securities law, a rule or regulation thereunder, a self-regulatory organization rule, or industry standard of conduct;

E. a state or federal authority or self-regulatory organization has imposed a remedial action, such as special training, continuing education requirements, or heightened supervision, on an Associated Person; and

F. a state or federal authority or self-regulatory organization has provided information indicating that the Applicant or an Associated Person otherwise poses a threat to public investors.

ACLP-Inpellis- 0014106

**Explain how this Standard is met.**

1. Is the Applicant or any of its Associated Persons the subject of any of the following *

a. adverse actions by state or federal authority or self-regulatory organizations with respect to registration or license determinations;

b. a sales practice event, pending arbitration or pending private civil action;

c. pending, adjudicated or settled regulatory action or investigation by any regulatory or self-regulatory authority, or any civil or criminal action resulting in guilty or no contest plea;

d. unpaid arbitration awards involving the Applicant, its control persons, principals, registered representatives, any lender of 5% or more of the Applicant's net capital, or any other Associated Person of the Applicant;

e. termination for Cause or permitted to resign after an investigation of an alleged violation of federal or state securities law, rules or regulations or a self-regulatory rule or industry standard of conduct;

f. regulatory imposed remedial action such as special training, continuing education requirements, or heightened supervision on an Associated Person by a state or federal authority or self-regulatory organization; or

g. information from an industry authority indicating the Applicant or its Associated Persons are a threat to public?

◉ Yes ○ No

Regarding the event(s), unless details of a particular event have been reported to the CRD system, provide information (e.g., subject party, nature of the activity, any findings, any fine, other dispositions) for each event involving the Applicant and/or its Associated Persons. *

All events have been reported to the CRD system.

2. Pursuant to NASD Rule 1014(b)(1), where the history of the Applicant or its Associated Persons includes any of the events set forth in NASD Rule 1014(a)(3)(A) and (C) through (E), there is a presumption that the Application should be denied. The Applicant may overcome the presumption of denial by demonstrating that it can meet each of the standards for admission in NASD Rule 1014(a), notwithstanding the existence of any of the events set forth in NASD Rule 1014(a)(3)(A) and (C) through (E). To the extent that any of the referenced events exist for the Applicant or its Associated Persons, provide a detailed explanation, in light of the existence of such events, as to how the Applicant is nonetheless capable of complying with industry rules, regulations, laws, and observing high standards of commercial honor and just and equitable principles of trade. Please reference any controls or systems put in place and refer to any specific pages or sections in the Applicant's written supervisory procedures that address heightened supervisory requirements. *

NA

3. Indicate whether the Applicant or any Associated Persons have been found to have violated the same federal securities laws or regulations, the rules thereunder, or FINRA Rules on more than one occasion. In such instances, identify the nature of the repetitive occurrences, the corrective action the Applicant has taken to prevent future violations, and the specific persons with responsibility for supervision in the areas noted with repeat violations and/or Associated Persons who have been found to have repeat violations. *

NA

4. Will this Application involve a transfer of assets without a corresponding transfer of liabilities? *

○ Yes ◉ No

**Provide supporting documents.**

1. Documentation of any of the events described in NASD Rule 1014(a)(3), unless the event has been reported to the CRD system

3. Any other documentation that would be pertinent to FINRA's review of this Standard

**Standard 4: Contractual and business relationships**

# Continuing Member Application

### Standard 4: Contractual and business relationships

NASD Rule 1014(a)(4): The Applicant has established all contractual or other arrangements and business relationships with banks, clearing corporations, service bureaus, or others necessary to:

(A) initiate the operations described in the Applicant's business plan, considering the nature and scope of operations and the number of personnel; and

(B) comply with the federal securities laws, the rules and regulations thereunder, and FINRA Rules.

ACLP-Inpellis- 0014107

**Explain how this Standard is met.**

1. Identify whether any new agreements or business relationships are being established or whether existing agreements are being modified in order to effectuate the proposed change. Such agreements may include, but are not limited to, expense sharing, clearing, custody, outsourcing, independent contractor, etc. *

> No new agreements or business relationships are being established or modified. Notwithstanding, Nesa will be acquiring the remaining 75.1% of Alexander Capital thirty days after approval of this Application. A copy of the securities purchase agreement is annexed hereto.

2. Identify any dependencies or conditions (e.g., shareholder approval, regulatory approval) that must be satisfied prior to conducting the proposed change. *

> None.

3. Will the proposed change result in the creation of an expense sharing agreement ("ESA") or amendment to an existing ESA? *

○ Yes  ◉ No

**Provide supporting documents.**

1. Copies of the Applicant's Fidelity bond and cancellation rider (if impacted by the proposed change)

2. Agreements, to the extent any such agreements are put in place, replaced or amended as a result of the proposed change, including:

    a. Clearing agreements

    b. Administrative services agreement

    c. Agreement with FinOp Principal

    d. Commission sharing agreement

    e. Technology services agreement, including arrangements with third-party providers of electronic storage media (SEC Rule 17a-4(f))

    f. Compliance services/support agreement

    g. Expense sharing agreements and supporting documents, including bank statements, tax returns, etc., as applicable

    h. Other agreements pertinent to the conduct of the proposed change

3. Transaction documents (e.g., letter(s) of intent, asset purchase agreements, share purchase agreements, merger agreements, board resolutions)

[NESA & EXITUS.pdf 14753271 bytes](#)

[nesa buy out.pdf 562683 bytes](#)

4. Any other documentation that would be pertinent to FINRA's review of this Standard

**Standard 5: Facilities**

# Continuing Member Application

> ### Standard 5: Facilities
>
> NASD Rule 1014(a)(5): The Applicant has or has adequate plans to obtain facilities that are sufficient to:
>
> (A) initiate the operations described in the Applicant's business plan, considering the nature and scope of operations and the number of personnel; and
>
> (B) comply with the federal securities laws, the rules and regulations thereunder, and FINRA Rules.

ACLP-Inpellis- 0014108



**Explain how this Standard is met.**

1. Is the Applicant making any material changes to existing facilities or locations, or will any proposed change in business require additional space and/or locations? *

○ Yes  ◉ No

2. As applicable, identify whether various departments (e.g., research, investment banking, trading) of the Applicant are separated by appropriate information and physical barriers, and describe the methods for maintaining such barriers.

> The Investment Banking team's office is located on the 5th Floor and has its own entrance separate and apart from the 17th floor that houses the sales & trading departments. Access to each space will be through a card key access. Sales & Trading will not have access to Investment Banking and vise-a-visa.

3. Will the Applicant, as a result of the proposed change, at any of its locations share office space with an entity or an individual conducting activities other than the Applicant's business? *

○ Yes  ◉ No

4. Will the Applicant enter into or acquire any new lease or sublease arrangements as a result of the proposed change? *

○ Yes  ◉ No

5. Will the proposed change result in any change in locations of the Applicant that are owned premises, or result in the addition of private residence used as offices of the Applicant? *

○ Yes  ◉ No

**Provide supporting documents.**

1. For each leased location impacted by the proposed change, the master lease (the agreement between the owner of the property and the initial lessee)

2. For each sub-leased location impacted by the proposed change, the sub-lease

3. For each sub-lease impacted by the proposed change, written authorization from the landlord evidencing consent to sublet the premises (if required)

4. For each owned premises impacted by the proposed change, draft or executed deed of ownership

Note that the existence of an Expense Sharing Agreement does not negate the requirement to evidence that the Applicant has the right to operate from the premises.

5. Space sharing agreements impacted by or implemented as a result of the proposed change

6. A supervisory chart or listing which evidences the supervisory structure, the location of each designated supervisor, the number of Associated Persons currently supervised by each, and the anticipated additional number of Associated Persons to be supervised as a result of the proposed change

[ACLP Supervisory Chart - Post Additional Registered Reps - rc3.docx 20186 bytes](#)

[ACLP Supervisory Chart 6.2.15 - rc2.docx 21037 bytes](#)

[Organization - Supervision ChartII.DOCX 25968 bytes](#)

7. Any other documentation that would be pertinent to FINRA's review of this Standard

[Alexander_wsp_Underwriting_Market Making.pdf 1269762 bytes](#)

**Standard 6: Communications and operational systems**

# Continuing Member Application

ACLP-Inpellis- 0014109

## Standard 6: Communications and operational systems

NASD Rule 1014(a)(6): The communications and operational systems that the Applicant intends to employ for the purpose of conducting business with customers and other members are adequate and provide reasonably for business continuity in each area set forth in NASD Rule 1013(a)(1)(F)(xii).

### Explain how this Standard is met.

1. Describe (i) the impact, if any, on the communication and operational systems of the Applicant which are utilized for the purpose of conducting business with customers and other firms, (ii) the adequacy of such systems in light of the proposed change, and (iii) the impact on plans in place to ensure business continuity. *

> None.

2. Describe how the systems and equipment of the Applicant will be impacted by the proposed change, and how the Applicant will address potential issues (e.g., adding new systems/equipment, modifying existing systems). *

> None.

3. Regarding business continuity, describe how the proposed change impacts capacity in light of any anticipated increase in usage levels, and describe in detail any changes to contingency plans to address system failures, disaster recovery plans, system security, etc. *

> None.

4. Will the Applicant conduct business from multiple locations as a result of the proposed change? *

○ Yes ● No

5. Will, as a result of the proposed change, one or more of the Applicant's proposed locations be the residence of an Associated Person? *

○ Yes ● No

6. Will the proposed change affect or result in the Applicant's use of social media sites, such as blogs and social networking sites, for business communications? *

○ Yes ● No

### Provide supporting documents.

1. Business continuity plan (if impacted)

2. Business continuity disclosure statement (if available)

3. A step-by-step description of the order flow on the trading platforms, supported by screenshots or schematic diagrams (as applicable to the proposed change)

4. Screenshots of both Applicant-facing and outward-facing pages of the social media sites, showing the flow from one screen to another (if applicable)

5. A systems conversion timeline, testing plan, and implementation schedule for proposed changes (if applicable)

6. Any other documentation that would be pertinent to FINRA's review of this Standard

**Standard 7: Maintaining adequate net capital**

# Continuing Member Application

## Standard 7: Maintaining adequate net capital

NASD Rule 1014(a)(7): The Applicant is capable of maintaining a level of net capital in excess of the minimum net capital requirements set forth in SEA Rule 15c3-1 adequate to support the Applicant's intended business operations on a continuing basis, based on information filed under NASD Rule 1013(b)(5).

ACLP-Inpellis- 0014110

The Department may impose a reasonably determined higher net capital requirement for the initiation of operations after considering:

A. the amount of net capital sufficient to avoid early warning level reporting requirements, such as SEA Rule 17a-11;

B. the amount of capital necessary to meet expenses net of revenues for at least twelve months, based on reliable projections agreed to by the Applicant and the Department;

C. any planned market making activities, the number of markets to be made, the type and volatility of products, and the anticipated maximum inventory positions;

D. any plan to enter into other contractual commitments, such as underwritings or other securities-related activities;

E. any plan to distribute or maintain securities products in proprietary positions, and the risks, volatility, degree of liquidity, and speculative nature of the products; and

F. any other activity that the Applicant will engage in that reasonably could have a material impact on net capital within the first twelve months of business operations.

---

**Explain how this Standard is met.**

1. Provide a detailed description of *
   a. the nature and source of the Applicant's capital;
   b. the terms and conditions of all financing arrangements; and
   c. any impact to the Applicant's ability to maintain net capital in excess of the Applicant's existing (or revised) minimum net capital requirement, and to support, on a continuing basis the business operations as proposed by the Applicant.

> Alexander's capital comes from commissions and/or fees on transactions in exchange listed equity securities, well as private placements and best efforts public offerings. Currently, Alexander does not currently have any financing arrangements, but may seek subordinated loans if necessary. As a result of the proposed changes, Alexander seeks to increase its net capital to $100,000. In addition, the addition of the proposed new Associated Persons, will result in marginal expenses. Specifically, each of the new Associated Persons will be paid a percentage of their gross commissions after deduction for clearing and certain other expenses. Accordingly, from a financial perspective, the Firm will not incur any significant expenses for the hiring of additional registered representatives.

2. Will the Applicant, in connection with the proposed change, rely on any form of subordinated lending relating to its capital position? *

◉ Yes ○ No

Describe the relationship between the anticipated lender and Applicant, the intended use of proceeds from the subordination, and any business arrangements or agreements related to the subordination. *

> To satisfy net capital requirements and to fund firm commitment underwritings, the Firm may employ temporary subordinated loans and/or subordinated loans and has identified potential lenders for this purpose. A proposed/example temporary subordinated loan is enclosed herewith. The Firm understands that it can employ temporary subordinated loans only three times per year for purposes of satisfying net capital requirements for firm commitment underwritings. Additionally, the current equity holders of the Firm, as well as, Messrs. Guidicipietro, Amato, O'Brien, Carlin, Gazdak, and Feinman, have the capital and have agreed to make additional capital contributions in the future, if necessary. The Firm anticipates that it will co-manage many of the firm commitment underwritings it undertakes, and therefore other underwriters will be committing capital to offerings in which the Firm is involved, thereby lessening the capital commitment required by the Firm.

3. Describe plans for additional funding of the Applicant, should such additional funding become necessary in the future. *

> The current equity holders of the Firm, as well as including, Messrs. Guidicipietro, Amato, O'Brien, Carlin, Gazdak, and Feinman, have the capital and have agreed to make additional capital contributions in the future, if necessary.

4. Provide a statement of the Applicant's statutory minimum net capital requirement, pursuant to SEA Rule 15c3-1, and any change in net capital calculation methodology by the Applicant, as a result of the proposed change. *

> Currently, Alexander's Net Capital Requirement in $50,000; however, Alexander will be maintaining a $100,000 net capital balance in order to engage in firm commitment underwriting.

5. Does the Applicant propose to rely on a pre-existing stream of revenue to support its capitalization in light of the proposed change? *

◉ Yes ○ No

Provide a detailed description of the revenue stream, how it is earned, and the entity or individual which is earning that revenue. *

ACLP-Inpellis- 0014111

The revenue stream is earned through commissions and/or fees on transactions in exchanged listed equity securities, as well as private placements and best efforts public offerings. These commissions are earned by the firm and its Associated Persons. In addition, the Firm derives its revenue from retail brokerage business which includes the buying and selling of equities, bonds, both corporate and municipal, option transactions and private placements.

**Provide specific data regarding infusions of capital to fund the Applicant.**

6. In connection with the proposed change, provide a list of all persons or entities that have contributed or plan to contribute equity capital or debt financing to the Applicant's business and provide information regarding the nature of the capital and/or financing.

| Date or Anticipated Date | Source | Recipient | Amount | Transfer Instrument (e.g., wire, check) |
| --- | --- | --- | --- | --- |

**Provide supporting documents.**

1. Verification of all funding, including but not limited to the below list. The information provided must provide Staff with a clear picture of the movement of funds from their origin to the Applicant, including any movement between intermediary and/or holding companies.

    a. For each source of funding: bank statements, checks (front and back), or wire advices (or the equivalent) covering the month of the withdrawal of funds from the source account, and also the three prior months

    FOCUS REPORT FILED 04.22.2015.pdf 39083 bytes

    APRILStatementPdf - Sav.pdf 94727 bytes

    FEBStatementPdf - ch.pdf 47060 bytes

    FEBStatementPdf.pdf 93977 bytes

    MARCHStatementPdf - Ch.pdf 47060 bytes

    MARCHStatementPdf.pdf 99722 bytes

    StatementPdf.pdf 50575 bytes

    b. For the Applicant: bank statements, checks (front and back), or wire advices (or the equivalent) covering the month of the deposit of funds into the Applicant's account, and also the three prior months

    FOCUS REPORT FILED 04.22.2015.pdf 39083 bytes

    FEBStatementPdf - ch.pdf 47060 bytes

    FEBStatementPdf.pdf 93977 bytes

    MARCHStatementPdf - Ch.pdf 47060 bytes

    MARCHStatementPdf.pdf 99722 bytes

    APRILStatementPdf - Sav.pdf 94727 bytes

    StatementPdf.pdf 50575 bytes

    c. For both the source and receiving entities, the corporate minutes (or equivalent) reflecting the authorization of funding

    d. Evidence of the financial wherewithal of anticipated sources of future funding, such as bank statements (or the equivalent)

    e. As applicable to the proposed change: pro-forma financial statements of the Applicant for twelve months, specifically identifying revenues and expenses related to the proposed change as well as the impact to equity, net capital, and projected profit or loss

    Pro Forma FS.xlsx 14174 bytes

    f. Financial assumptions supporting the monthly projections *

    Pro Forma FS.xlsx 14174 bytes

2. If the Applicant proposes to use a form of subordinated lending: a draft of the anticipated agreement and related supporting documentation (as detailed in Regulatory Notice 10-15)

TSL.doc 162304 bytes

Lender's Attestation.doc 119808 bytes

3. Any other documentation that would be pertinent to FINRA's review of this Standard

ACLP-Inpellis- 0014112

# Continuing Member Application

---

## Standard 8: Financial controls

NASD Rule 1014(a)(8): The Applicant has financial controls to ensure compliance with the federal securities laws, the rules and regulations thereunder, and FINRA Rules.

---

| Provide specific information regarding the financial controls |
| --- |

1. Identify the impact of the proposed change on the financial controls, systems, policies, and procedures that the Applicant will use to enable the FinOp to promptly access the Applicant's books and records, and to keep abreast of any financial and related problems occurring at the Applicant. *

> As the Firm is already approved for, and has participated in best efforts public offerings and private placements, there will be no change to the financial controls, systems, policies, and procedures. The FinOp, Thomas Sullivan, has 24/7 access to the Firm's accounting system to review and monitor all financial transactions involving the Firm. In addition, he has read-only access to the Firm's bank accounts and clearing firm reports with unlimited access to see all of the Firm's activities. A copy of his resume is enclosed herewith.

2. Describe how the proposed change will affect any of the following items: *

   a. Accounting system

   b. Hardcopy and/or electronic books and records

   c. Authorized signatories on bank and trading accounts

   d. Individual(s) responsible for daily journal entries and monthly closing of books and records

   e. Authorizations required and procedures regarding withdrawals of capital

   f. If the FinOp Principal works offsite or remotely: whether he or she will have online access to bank accounts, clearing accounts, etc., and whether that access will be read-only

   g. Whether the Applicant will employ or associate other persons who will support the financial and operation functions (e.g., internal bookkeeping staff); if so, identify each such person and their roles and responsibilities

   > NA

---

| Provide specific information regarding the Applicant's FinOp Principal(s). |
| --- |

3. Will the FinOp Principal change as a result of this Application? *

   ○ Yes  ● No

4. Will the Applicant have more than one FinOp Principal as a result of the change? *

   ● Yes  ○ No

   Provide a statement explaining the rationale for more than one FinOp Principal and the duties that each will execute. *

   > As an added precaution, the Firm will employ a part-time outside FinOp, Thomas Hopkins, in order to help assist its current full-time in-house FinOp Thomas Sullivan with all firm commitment underwriting related matters as necessary. Mr. Hopkins will be at Mr. Sullivan's disposal and may, at times, help calculate including, but not limited to, 15c3-1 calculations including the capital charges for firm commitment underwritings.

5. Provide a detailed description of the prior work experience of the Applicant's FinOp Principal relative to the business activities the Applicant will conduct following the change. (This description must also address how the individual satisfies NASD Rule 1014(a)(10)(D) which requires one year of direct or two years related experience in the subject area to be supervised. ) *

ACLP-Inpellis- 0014113

Thomas Hopkins has over twenty years of experience as FINOP in the financial services and securities industry. In his role as FINOP and Financial Consultant, he is responsible for providing and reviewing financial reporting and regulatory filings for broker-dealer clients. Mr. Hopkins was VP Regional Finance-Regulatory Reporting with Deutsche Bank Securities, Inc. and Cantor Fitzgerald & Co both in New York City, where he was responsible for implementing and testing new policy and procedures related to SEC regulations as well as financial management validation and control for the US broker-dealer including all regulatory reporting and financial statement reporting. Mr. Hopkins is experienced with developing procedures, controls and testing for SEA Rule 17a-5; net capital calculating and FOCUS reporting; SEC Form 17h, and presentation of financials to senior management. Mr. Hopkins is a former FINRA Coordinator as well as VP Finance. He holds a Bachelor of Science degree in Business Administration with Series 27 and 99 licenses. Further, Mr. Hopkins performed all 15c3-1 calculations including the capital charges for firm commitment underwritings at Deutsche Bank, Inc. in 2013 and 2014. In addition, he reviewed member firm net capital computations in his role as Regulatory Coordinator at FINRA from 2011 – 2013, and he performed net cap comps at LeBranch for 10 years. A copy of Mr. Hopkins resume is enclosed herewith.

6. Will the Applicant's FinOp Principal be either part-time with the Applicant or dually associated with another broker-dealer? *

◉ Yes ○ No

**FinOp Principal CRD ID** * `1835087`

Upon entering the CRD ID of the part-time or dually associated FinOp Principal(s) of the Applicant, certain information will be populated in the table below, such as information obtained from submissions made through the CRD system. Regarding the Applicant's proposed FinOp Principal, complete the table by providing the requested information with respect to each broker-dealer with which the FinOp Principal(s) is (are) associated and provide additional information as follows: *

    a. In the table provided, identify the percentage of time that the FinOp Principal(s) will spend at each applicable broker-dealer carrying out his or her responsibilities on a weekly basis.

    b. In the table provided, describe:

        i. The capacities (both FinOp Princial and non-FinOp principal) in which the FinOp Principal(s) will be serving (examples might include general securities principal, chief compliance officer, others) for each listed firm

        ii. The type of broker-dealer the FinOp Principal is associated with for each listed firm (examples might include introducing firm, wire order business, dealer activities firm, self-clearing firm, etc.)

| Principal | Principal CRD ID | Associated firm(s) | Associated firm CRD ID | Percentage of time per week | Capacities and firm type | null |
|---|---|---|---|---|---|---|

    c. Provide an explanation of how the FinOp Principal proposes to allot sufficient time to execute his or her duties for the Applicant, given his or her responsibilities with other broker-dealers, particularly in light of the proposed change.

Although Mr. Hopkins will serve on a part-time basis, he is not currently registered with any other broker-dealers. Thus, he will be readily available to assist as needed for each firm commitment underwriting deal that the Firm participates.

    d. Describe any system, policies, and procedures that the Applicant will implement to enable the part-time or dually associated FinOp Principal to promptly access the Applicant's books and records, and to keep abreast of any financial and related problems occurring at the Applicant, particularly in light of the proposed change.

Mr. Hopkins will have 24/7 access to the Firm's accounting system to review and monitor all financial transactions involving the Firm. In addition, he will have read-only access to the Firm's bank accounts and clearing firm reports with unlimited access to see all of the Firm's activities.

**Provide supporting documents.**

    1. Rule 3270 (formerly Rule 3030) notifications for the FinOp Principal (if applicable)

    2. Financial control procedures (if altered by the proposed change)

    3. Any other documentation that would be pertinent to FINRA's review of this Standard

    Tom_Hopkins_Resume.doc 60928 bytes

    Tom Sullivan CV.pdf 183311 bytes

**Standard 9: Written procedures**

# Continuing Member Application

**Standard 9: Written procedures**

ACLP-Inpellis- 0014114

NASD Rule 1014(a)(9): The Applicant has compliance, supervisory, operational, and internal control practices and standards that are consistent with practices and standards regularly employed in the investment banking or securities business, taking into account the nature and scope of Applicant's proposed business.

**Explain how this Standard is met.**

1. Describe any impact upon the Applicant's compliance, supervisory, operational, and internal control practices and standards in light of the proposed change. *

None. As Alexander has been previously approved and has participated in best efforts public offerings and private placements, it has the proper compliance, supervisory, operational, and internal control practices already in place. Notwithstanding, attached please find the Firm's updated written supervisory procedures for firm commitment underwriting.

**Provide supporting documents.**

1. Written supervisory procedures ("WSPs") impacted by the proposed change, including:

   a. Written supervisory control procedures

   3-26-15 Alexander Capital LP WSPs.pdf 3512277 bytes

   Alexander_wsp_Underwriting_Market Making.pdf 1269762 bytes

   b. Anti money laundering procedures

   c. Financial control procedures

   d. Internal operating procedures

   e. Internal control procedures

Ensure that the WSPs contain a Designation of Principals identifying the principal(s) responsible for each area (e.g., AML, Supervisory Controls) and business activity or product line (including activities or product lines categorized as OTH or Other that require broker-dealer registration).

As a reminder, please ensure that the WSPs clearly state:
- Who: the identification of the principal/ supervisor responsible for conducting the subject procedure
- What: a description of the specific procedure that is to be conducted by the principal/supervisor
- When: a statement as to when or how often the specific procedure is to be conducted
- How evidenced: a statement as to how the Applicant will evidence the fact that the procedure has been conducted

WSPs that do not conform to the above may not be deemed adequate under this Standard.

2. WSP checklist, as it pertains to procedures impacted by the change

3. Sample of the reports (if impacted by the proposed change) utilized to support supervisory, AML, financial control, internal operating, and internal control procedures *

04.2015 BANK REC OPERATING ACCOUBNT.pdf 65393 bytes

04.2015 BANK REC PAYROLL ACCOUNT.pdf 45922 bytes

04.2015 BANK REC SAVINGS ACCOUNT.pdf 41232 bytes

AC General Ledger 04.30.2015.pdf 256776 bytes

AC income statement 01-04.2015.pdf 37241 bytes

AC Trial Balance 04.2015.pdf 38989 bytes

CHASE INK CARD RECONCILIATION 04.2015.pdf 51826 bytes

ACLP Balance Sheet 04.2015.pdf 35876 bytes

prosurv alerts.pdf 17844 bytes

RBC_CAS_ProSurv_Standard_Exception_Alerts.pdf 196231 bytes

4. Any other documentation that would be pertinent to FINRA's review of this Standard

**Standard 10: Supervisory structure**

ACLP-Inpellis- 0014115

# Continuing Member Application

FINRA Continuing Membership Application Receipt

## Standard 10: Supervisory structure

NASD Rule 1014(a)(10): The Applicant has a supervisory system, including written supervisory procedures, internal operating procedures (including operational and internal controls), and compliance procedures designed to prevent and detect, to the extent practicable, violations of the federal securities laws, the rules and regulations thereunder, and FINRA Rules.

In evaluating the adequacy of a supervisory system, the Department shall consider the overall nature and scope of the Applicant's intended business operations and shall consider whether:

A. the number, location, experience, and qualifications of supervisory personnel are adequate in light of the number, location, experience, and qualifications of persons to be supervised; the Central Registration Depository record or other disciplinary history of supervisory personnel and persons to be supervised; and the number and locations of the offices that the Applicant intends to open and the nature and scope of business to be conducted at each office;

B. the Applicant has identified specific Associated Persons to supervise and discharge each of the functions in the Applicant's business plan, and to supervise each of the Applicant's intended offices, whether or not such offices are required to be registered under FINRA Rules;

C. the Applicant has identified the functions to be performed by each Associated Person and has adopted procedures to assure the registration with FINRA and applicable states of all persons whose functions are subject to such registration requirements;

D. each Associated Person identified in the business plan to discharge a supervisory function has at least one year of direct experience or two years of related experience in the subject area to be supervised;

E. the Applicant will solicit retail or institutional business;

F. the Applicant will recommend securities to customers;

G. the location or part-time status of a supervisor or principal will affect such person's ability to be an effective supervisor;

H. the Applicant should be required to place one or more Associated Persons under heightened supervision pursuant to Notice to Members 97-19;

I. any remedial action, such as special training or continuing education requirements or heightened supervision, has been imposed on an Associated Person by a state or federal authority or self-regulatory organization; and

J. any other condition that will have a material impact on the Applicant's ability to detect and prevent violations of the federal securities laws, the rules and regulations thereunder, and FINRA Rules.

**Explain how this Standard is met.**

1. Describe any changes or additions to *

    a. management or supervisory personnel (including heads of business lines),

    b. addition of offices,

    c. changes to supervisory responsibilities,

    d. changes involving heightened supervision, and

    e. any changes to supervisory systems or to the supervisory framework.

None.

2. Persons identified in Form CMA who are or will be responsible for discharging supervisory functions must have a minimum of one year of direct experience or two years of related experience in the subject area to be supervised. (See NASD Rule 1014(a)(10)) In light of the noted requirement, describe the relevant experience of personnel to supervise new or expanded areas of the Applicant's business relating to the proposed change, including (at a minimum) *

    a. where such experience was obtained,

    b. duration of the experience, and

    c. positions held and responsibilities.

ACLP-Inpellis- 0014116

Robert S. Feinman, Chief Executive Officer, is a Wall Street veteran with over 40 years of senior executive experience. During his +30 years in financial services he has worked with industry leaders Lehman Bros., Citigroup Smith Barney, Prudential Securities and UBS. Throughout his career he has skillfully maximized resource, built, trained and motivated sales teams and surpassed corporate goals. During Mr. Feinman's 17 year career at Lehman Bros., he achieved the title of National Equity Sales Manager and was the private wealth member of Lehman's Investment Policy Committee. As Director of Executive Services at Kaufman Bros. L.P. he advised senior corporate executive teams in the management of corporate 10b-18 repurchase plans, 10b5-1 plans and Rule 144 transactions; liquidating concentrated, restricted stock positions. He has managed major metropolitan branch offices in both New York City and Los Angeles, California. Mr. Feinman's CRD # is 205708 and he maintains his Series 1, 3, 5, 15, 8, 24, 63 and 66. Jonathan Gazdak, Managing Director Head of Investment Banking, is a Managing Director and the Head of Investment Banking. His concentration is in the Technology, Digital Media, Media and Entertainment industries, as well as Specialty Finance vehicles. He has worked on a broad range of transactions, including public equity and debt financings, restructurings, M&A and SPACs. Prior to Alexander, Mr. Gazdak was the head of the Technology Group at Aegis Capital. While at Aegis, he helped complete over 40 public / private financings and M&A transactions. Prior to Aegis, Mr. Gazdak was in the Media and Entertainment group at Oppenheimer & Co. Prior to his career in Investment Banking, Mr. Gazdak was an entrepreneur who owned and managed an International IT Consulting and Services firm for 10 years, selling it in 2005. Mr. Gazdak was a national board member and regional President of the TechServe Alliance. Mr. Gazdak received his MBA from Columbia Business School with Beta Gamma Sigma honors and from the University of Florida with a degree in Mechanical Engineering with honors. Mr. Gazdak's CRD #5678294 and he maintains his Series 24, 63 and 79. Mr. Spratt will be responsible for discharging supervisory functions related to the Firm's proprietary trading. David spent 2 years as a market maker in LSE stocks, as well as becoming a licensed Head Dealer on Xetra. He moved back to the U.S. and took an opportunity with Vandham Securities Corp. to make markets and develop an institutional sales book of business. In growing that hybrid market maker / sales trader role beyond the confines of the small sized B/D, David chose to utilize his experience, and helped to start a new market making and sales desk at Tradition-Asiel Securities. David holds the Licenses of Series 24, 55, 7, and 63. Enclosed please find the biographies for each General Securities Principal employed by the Firm that have indicated a willingness to supervise the proposed additional 50 registered representatives. In addition, each General Securities Principal will compensated with a salary for their supervisory duties. Further, please find an organizational chart before the inclusion of the proposed additional registered representatives and an organizational chart, which includes the proposed additional 50 registered representatives. If approved, the Firm's total Associated Persons will be one hundred (100) with thirteen (13) being General Securities Principals. Thus, the ratio will be approximately seven (7) Associated Persons for every one (1) General Securities Principal. Specifically, FINRA's "rule of thumb" is a member should employee one General Securities Principal per every 10-15 Associated Persons. Under that rule, the Firm could employ 130 to 195 Associated Persons. Thus, the Firm's request to increase its Associated Persons to one hundred (100) is reasonable and will not affect its ability to properly supervise its registered employees.

3. Will the proposed change to the Applicant result in a change in Chief Compliance Officer? *

○ Yes  ● No

---

**Provide supporting documents.**

---

1. Rule 3270 (formerly Rule 3030) notification(s) for principals other than the FinOp Principal (addressed in Standard 8) that have outside business activities (if applicable)

2. Any other documentation that would be pertinent to FINRA's review of this Standard

[Supervisor Biographies.pdf 719654 bytes](#)

[ACLP Supervisory Chart - Post Additional Registered Reps - rc3.docx 20186 bytes](#)

[ACLP Supervisory Chart 6.2.15 - rc2.docx 21037 bytes](#)

**Standard 11: Books and records**

# Continuing Member Application

---

## Standard 11: Books and records

NASD Rule 1014(a)(11): The Applicant has a recordkeeping system that enables Applicant to comply with federal, state, and self-regulatory organization recordkeeping requirements and a staff that is sufficient in qualifications and number to prepare and preserve required records.

---

**Explain how this Standard is met.**

---

1. Describe any changes to the Applicant's recordkeeping system as a result of the proposed change, specifically identifying any impact to *

    a. procedures,

    b. books and records,

    c. communication systems, and

    d. the software and systems to be used to prepare business and financial records, including general ledger, trial balance, balance sheet, and net capital computation (e.g., PeopleSoft, ADP, Creative Solutions).

ACLP-Inpellis- 0014117

None.

2. Describe any changes to, or to the scope of services provided by, any entities providing recordkeeping services to the Applicant, specifically identifying any service bureaus, clearing/correspondent arrangements, or other arrangements involving the creation and retention of books and records. *

None.

3. Describe how the Applicant's records storage (including email) will be impacted by the proposed change, specifically identifying (for example): *

      a. hardcopy,

      b. microfilm/microfiche,

      c. optical storage technology, or

      d. other media or methods.

None.

4. Describe any changes to the location where the Applicant's electronic records will be maintained (including email archives). *

None.

5. Identify all new types of records to be created and maintained as a result of the proposed change. *

None. The Firm will continue to maintain due diligence files for each deal, as it has done with its best efforts public offerings and private placements.

---

**Provide supporting documents.**

1. A conversion timeline, testing plan, and implementation schedule for the proposed recordkeeping system changes (if applicable)

2. Samples of relevant books and records that will be created and maintained relating to the new business activities or as a result of the proposed change

[Alexander Due Diligence (Tech).docx 155253 bytes](#)

[SilverSun Bring-down Questions.docx 30566 bytes](#)

[SSNT - D&O Questionnaire (2014-2015).doc 196096 bytes](#)

[Time and Responsibility Checklist.docx 109860 bytes](#)

3. Any other documentation that would be pertinent to FINRA's review of this Standard

**Standard 12: Continuing education**

# Continuing Member Application

---

### Standard 12: Continuing education

NASD Rule 1014(a)(12): The Applicant has completed a training needs assessment and has a written training plan that complies with the continuing education requirements imposed by the federal securities laws, the rules and regulations thereunder, and FINRA Rules.

---

**Explain how this Standard is met.**

1. Identify any changes to the Applicant's Continuing Education ("CE") program, including the Firm Element needs assessment and written training plan as a result of the proposed change. This should include identification of what additional courses may be required, which personnel will be required to participate, and the timeline for implementing the planned modification to the CE Firm Element. *

The Firm utilizes Quest for its CE programs. As a result of the proposed changes, the Firm intends to utilize additional course from Quest including, "Investment Banking for Equity Professionals," and "IPO Allocations." The Firm's Capital Markets and Investment Banking teams will be required to participate in these new courses. The Firm intends to implement same upon approval of this Application. The Investment Banking and Capital Markets teams will be required to participate.

2. Identify any changes to the person(s) responsible for the Firm Element and the Regulatory Element of the Applicant's CE program. *

ACLP-Inpellis- 0014118

None.

**Provide supporting documents.**

1. Revised continuing education training needs assessment and written training plan (if applicable)

2. Any other documentation that would be pertinent to FINRA's review of this Standard

ACLP-Inpellis- 0014119