**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOHN J. AQUINO,<br>CHAPTER 7 TRUSTEE<br>By Its Assignee,<br>Convergent Distributors of Texas, LLC<br><br>Plaintiff,<br><br>v.<br><br>ALEXANDER CAPITAL, LP<br>&<br>Its Managing Partners:<br>JOSEPH AMATO,<br>ROCCO GUIDICIPIETRO, and<br>NESA MANAGEMENT, LLC<br><br>Defendants | Case #1:21-cv-01355-JSR |

**DECLARATION OF WILLIAM C. RAND, ESQ.**
**IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

# EXHIBIT 13A

# 10-27-15 Atty. Carmel Ltr to FINRA Re ACLP Rule 1017 CMA Application



**SICHENZIA ROSS FRIEDMAN FERENCE**LLP

October 27, 2015

*Via FINRA Gateway*

Mr. Rogelio A. Francois
FINRA - Principal Examiner
One World Financial Center
200 Liberty Street
New York, NY 10281-1003

> Re: **Continuing Membership Application**
> **Firm: Alexander Capital L.P.**
> **CRD No. 40077 / Application No. 20150457044**

Dear Mr. Francois:

As you know, this firm represents Alexander Capital L.P. ("Alexander" or the "Firm"). We are in receipt of the Staff's request to Alexander, pursuant to Rule 1017 dated October 19, 2015 (the "Request"). We trust the foregoing responses will satisfy, in full, the Request such that Alexander's application to amend its Membership Agreement to increase the number of associated persons, approval to engage in firm commitment underwriting activity, approval to engage in proprietary trading, and change of ownership is approved by FINRA.

1) Provide documentation of NESA Management LLC's ("NESA") assumption of the role of General Partner of the firm (draft or executed). It appears this item may have been Exhibit J and/or K, but it appears it was omitted.

    **Response:** Responsive documents are enclosed herewith as Exhibit A.

2) Provide confirmation that NESA will merely be purchasing the shares of the firm, not its assets, and that such assets will at all times remain the property of the firm. Section 1 of the Purchase Agreement states that "Seller agrees to sell, assign and transfer to the Purchaser…the Company's Existing Included Assets", which is defined as all of the firm's assets. The paragraph goes on to state that the assets "shall remain Company property", which appears to conflict with the statement that they are to be transferred.

    **Response:** NESA will be purchasing the shares of the Firm, not its assets. As such, the assets shall remain the property of the Firm.

3) Regarding the firm's liabilities, certain liabilities must remain with the firm, including customer complaints and regulatory obligations related to customer claims. Based on staff's review, it appears from the firm's response and Exhibits I and J to that response that the firm intends to transfer certain arbitrations to NESA, a non-registered entity. However, such claims need to remain the obligations of the firm so that they will remain on the firm's records, be subject to regulatory scrutiny, etc. Please explain and clarify.



PDE0129

Mr. Rogelio A. Francois
FINRA
October 27, 2015
Page 2

    **Response:**    All liabilities will remain that of the Firm, including the referenced arbitrations.

4) Please confirm the identities and registration status of the purchaser designees. Pursuant to Section 4 of the Purchase Agreement, these individuals will have authority that will require registration (e.g., the right to hire/fire firm employees, control firm bank accounts, conduct the firm's brokerage business, open new branch offices, etc.).

    **Response:**    The purchaser designees are Joseph Amato (CRD# 2751635) and Rocco Guidicipietro (CRD# 2489732).

5) Please provide a description of how payments will flow pursuant to Section 5(b) of the Purchase Agreement. As currently drafted, it appears that transaction-based compensation (100% of firm revenues) may be paid to a non-registered entity and/or individuals (the purchaser and/or its designees) in violation of Section 15(a) of the Securities Exchange Act of 1934.

    **Response:**    Please be advised that this paragraph of Securities Purchase Agreement contains a typographical error which incorrectly refers to NESA. Please be advised that all transaction based compensation will be paid to Alexander Capital.

6) As discussed, the Firm was issued a Wells notification as of 9/1/2015 (Exam/Investigation#2012034858). Please provide a detailed statement as to why the matters noted should not impact the application.

    **Response:**    A copy of the notification dated September 1, 2015 (the "**Notification**") and the firm's response thereto are annexed hereto as Exhibits B & C, respectively. As an initial matter, each of the actions that form the basis of the allegations occurred in the 2010-2012 timeframe, *before* Alexander Capital was sold to the current owners and under the supervision and guidance of persons who are no longer employed by the Firm.

    Specifically, in March 2011, Alexander Capital facilitated a transaction in which a single accredited investor invested $100,000 by way of a private placement in a company called DRTV. The Firm made $2,000 in commission from that transaction and the broker, Mark Hotton, made $8,000. By 2015, *every* person who was in any way associated with the DRTV transaction had departed Alexander.

    At the time the alleged misconduct occurred, the Firm was owned by H.K. Landis Capital LLC and Mr. Boxer. If any misconduct occurred, it occurred under the former owners' watch.

Mr. Rogelio A. Francois
FINRA
October 27, 2015
Page 3

In December of 2013, a full year after the last misconduct alleged by the Staff, active control of the Firm was sold to Messrs. Amato and Guidicipietro.[1] Neither Mr. Figilola, nor Messrs. Amato and Guidicipietro were owners of the Firm, managers at the Firm, or in any way in control of any aspect of the Firm's business at the time of the alleged misconduct.

Not only did the current ownership have no part in the alleged misconduct, they received no financial benefit from it. The DRTV transaction netted the Firm only $2,000. This revenue was long gone by the time the new owners walked in the door. Thus, the current owners of Alexander neither benefited from the alleged misconduct nor had any responsibility for it.

These allegations should in no way affect Alexander's pending application to amend its Membership Agreement. As further set forth in in its previous response dated August 6, 2015, Alexander has made significant changes to its personnel since this time.

By way of example, the Firm hired Robert Feinman (CRD #205708) as its new Chief Executive Officer. Mr. Feinman was hired because he has almost forty (40) years of experience in the financial services industry. He has worked for major firms including UBS, Morgan Stanley, and Citigroup. A review of Mr. Feinman's CRD evidences *zero* negative marks.

Thomas Sullivan (CRD #1145000) was hired as the Firm's Financial and Operations Principal. Mr. Sullivan has over thirty (30) years of experience in the industry with significant compliance and oversight experience, including four years working as a field supervisor for NASD/FINRA.

With respect to supervision, the Firm has increased its supervisory staff. The Firm currently has thirteen (13) supervisors overseeing its approximately thirty (30) registered representatives.

Most recently, the Firm hired Luis F. Restrepo (CRD# 2167380) as its Chief Compliance Officer. A copy of his CV is annexed hereto as Exhibit D. Mr. Restrepo has over 25 years of securities industry experience and his CRD is pristine with *zero* negative marks. Between 1999 and 2010, Mr. Restrepo was the Founder, Chief Executive Officer and Chief Compliance

---

[1] A share having been previously sold to Mr. Figliola, who has never had active control of any aspect Alexander Capital.

Mr. Rogelio A. Francois
FINRA
October 27, 2015
Page 4

Officer of MultiTrade Securities, LLC ("MultiTrade"). In connection with same, Mr. Restrepo managed every aspect of MultiTrade for over 10 years, including sales, trading, risk management, operations, compliance, and overall finance and administration. MultiTrade was primarily an institutional broker-dealer, with a small US-based retail clientele, focused primarily on the US institutional market and Latin American markets, particularly Brazil and Mexico. From 2010-2013, Mr. Restrepo was the Principal in charge of supervising the investment banking business of Religare Capital Markets, Inc., ("RCM") and was their Chief Executive Officer and Chief Compliance Officer. At RCM, Mr. Restrepo obtained FINRA and SEC approval to operate in the U.S. and oversaw the overall operation and regulatory infrastructure of the firm. In addition, he oversaw the U.S. underwriting, road shows and placement of several deals in 2011 and 2012, including a follow-on placement of Far East Energy in the US public market, and two IPO's in India: Reid & Taylor Limited and Dewan Housing Finance Corporation. After leaving RCN in 2013, Mr. Restrepo worked as an independent consultant assisting Seton Securities Group Inc. in all compliance matters with specific assistance in the supervision of their retail and investment banking businesses, including assisting with the supervision of the investment bankers, sourcing and due diligence of deals, reviewing advisory and placement agreements, reviewing structuring term sheets and prospectuses, and the offering and solicitation process all the way to placement and closing of the securities and deals. From late 2013 through early 2015, Mr. Restrepo also helped found DaKoy Capital Markets LLC ("DaKoy") as its Chief Executive Office and Chief Compliance Officer. DaKoy is an agency broker dealer approved by FINRA to conduct a securities business in equities, fixed income, underwriting (both on a firm and best efforts basis), municipal underwriting and brokerage, options, proprietary trading and private placements.

In addition, Alexander has retained the services of its former Chief Compliance Officer, Mr. Timothy Stack (CRD #1426363). Mr. Stack has been in the industry since 1986, and has significant supervisory and compliance experience as set forth more fully in Alexander's initial application. Further, Mr. Stack has zero negative marks on his CRD. Mr. Stack will be assuming a Senior Compliance role with Alexander.

As set forth above, the allegations alleged in the Notification should in no way affect Alexander's pending application to amend its Membership Agreement as they were years prior to the change of control and occurred under the former owners' watch. In addition, the Firm has made significant changes to personnel since that time period.

Mr. Rogelio A. Francois
FINRA
October 27, 2015
Page 5

    I trust the materials provided satisfy your questions and Alexander's application. If you have any additional questions or concerns, please feel free to contact me.

                                                Very yours truly,

                                                Ross D. Carmel

Encls.

# EXHIBIT A

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This ASSIGNMENT AND ASSUMPTION AGREEMENT (this "**Agreement**"), dated as of _____, 20\_\_ is made by and between Alexander Capital Holdings, Inc., a Delaware corporation (the "**Company**"), and Nesa Management LLC, a New York limited liability company ("**New GP**").

<u>W I T N E S S E T H</u>

WHEREAS, the Company holds 100% of the general partnership interest (the "**GP Interest**") of Alexander Capital, L.P., a Delaware limited partnership (the "**Partnership**"), and serves as the sole General Partner thereof; and

WHEREAS, the Company desires to transfer the GP Interest to New GP, and New GP desires to assume the role of General Partner of the Partnership, dated as of the date hereof; and

WHEREAS, the Company proposes to transfer the GP Interest to New GP and that New GP be admitted immediately prior to such transfer as General Partner of the Partnership.

NOW THEREFORE, in consideration of the foregoing and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, the parties hereto now agree as follows:

1. <u>Transfer and Assignment of GP Interests</u>. The Company hereby grants, bargains, conveys, assigns, transfers and delivers the GP Interest to New GP, and its successors and assigns, and New GP hereby accepts such GP Interest, pursuant to the Securities Purchase Agreement dated August 1, 2014 and as of the date hereof.

2. <u>Assumption of General Partner Status</u>. New GP accepts and agrees to duly and timely pay, perform and discharge the rights, duties and obligations of General Partner of the Partnership, and New GP agrees to serve as General Partner of the Partnership.

4. <u>Assumption of Liabilities</u>. As consideration for the grant, bargain, conveyance, assignment, transfer and delivery made under Section 1 hereof, New GP assumes and agrees to duly and timely pay, perform and discharge all liabilities and obligations of the Partnership to the full extent (and only to the extent) that the Company, as general partner of the Partnership, has been heretofore or would have been in the future, were it not for the execution and delivery of this Agreement, obligated to pay, perform and discharge such liabilities and obligations (the "Liabilities"). New GP hereby agrees to indemnify, defend and hold harmless the Company, its successors and assigns, of and from any and all costs, liabilities and expense, including court costs and attorneys' fees, arising from or connected with the Liabilities hereby assumed.

5. <u>Further Assurances</u>. The parties hereto hereby each covenant and agree that, at any time and from time to time after the delivery of this Agreement, at the other party's request and expense, each party, its successors and assigns, will do, execute, acknowledge and deliver, or will cause to be done, executed, acknowledged and delivered, any and all such further acts, conveyances, transfers, assignments, powers of attorney and assurances as the other party reasonably may require to more effectively grant, convey, assign, transfer, set over to or vest in New GP the GP Interest, or to better enable New GP to realize upon or otherwise enjoy the GP Interest, to effect the assumption by New GP of the Liabilities or to otherwise carry into effect the intent and purposes of this Agreement.

6. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without reference to the choice of law principles thereof.

7. <u>Counterparts</u>. This Agreement may be executed in two counterparts, each of which shall be deemed an original, but all of which shall be considered one and the same agreement.

IN WITNESS WHEREOF, this Agreement has been signed by or on behalf of each of the parties as of the date first written above.

ALEXANDER CAPITAL HOLDINGS, INC.

By: _____
Name:           Joseph Figiolo

NESA MANAGEMENT LLC

By: _____
Name:      Joseph Anthony Amato
Title:             Manager

By: _____
Name:       Rocco Guidicipietro
Title:            Manager

ASSIGNMENT AND ASSUMPTION AGREEMENT

# EXHIBIT B



Financial Industry Regulatory Authority

*Via First Class U.S. Mail and
Certified Mail with Return Receipt
Requested No.: 7006 2760 0001 3991 1286*

September 1, 2015

Alexander Capital, L.P. (*scott@theholcomblawfirm.com*)
c/o Scott Holcomb
The Holcomb Law Firm, LLC
2306 Briarcliff CMNS NE
Atlanta, GA 30345

Re:   **Alexander Capital, L.P. (BD No. 40077)
      Examination/Investigation Number 2012034858401**

Dear Mr. Holcomb:

On September 1, 2015, the staff of FINRA's Department of Enforcement advised you that it made a preliminary determination to recommend that disciplinary action be brought against Alexander Capital, L.P. ("Alexander Capital" or the "Firm). During that conversation, the staff also advised you of the nature of the potential violations. Specifically, the staff advised you as follows:

- **Contravention of Section 17(a) of the Securities Act of 1933, Violation of NASD Conduct Rule 2310, 3010(a), 3010(b) and FINRA Rule 2010.** In connection with a private placement offering for DRTV Partners, LLC ("DRTV"), Alexander Capital, L.P (through registered representative MH) sold interests in DRTV by means of untrue statements and omissions of material fact, failed to conduct adequate due diligence on DRTV, and failed to establish, maintain and enforce an adequate supervisory system and written supervisory procedures with regards to its private placement business activities. By reason of the foregoing conduct, Alexander Capital acted in contravention of Section 17(a)(2) of the Securities Act of 1933, and violated NASD Conduct Rules 2310, 3010(a), 3010(b) and FINRA Rule 2010.

- **Violation of NASD Conduct Rule 3010(a)(7) and FINRA Rule 2010.** Alexander Capital failed to ensure and evidence that each of its registered representatives and registered principals participated in the Firm's 2010 annual compliance meeting and failed to evidence that it held any annual compliance meetings in 2011. By reason of the foregoing conduct, Alexander Capital violated NASD Conduct Rule 3010(a)(7) and FINRA Rule 2010.

Investor protection. Market integrity.   Two Jericho Plaza   t 516 827 6100
                                         2nd Floor, Wing A    f 516 827 6101
                                         Jericho, NY          www.finra.org
                                         11753-0249

- **Violations of NASD Conduct Rules 3012(a)(1), 3012(a)(2) and FINRA Rules 3130(b), 3130(c) and 2010.** Alexander Capital failed to prepare adequate reports to its senior management for 2010 and 2011 calendar years and failed to prepare a report to its senior management for 2012 calendar year. In addition, Alexander Capital failed to prepare adequate annual certifications for 2010, 2011 and 2012 calendar years. By reason of the foregoing conduct, Alexander Capital violated NASD Conduct Rules 3012(a)(1), 3012(a)(2) and FINRA Rules 3130(b), 3130(c) and 2010.

- **Violations of Sections 15 and 17 of the Securities Exchange Act of 1934 and Rules 15c3-1, 17a-3(a)(11), 17a-11 promulgated thereunder and FINRA Rule 2010.** Alexander Capital conducted a securities business while failing to maintain its required minimum net capital, failed to prepare and maintain an accurate general ledger, trial balances and net capital computations and failed to notify the Securities and Exchange Commission of its net capital deficiencies. By reason of the foregoing conduct, Alexander Capital violated Sections 15 and 17 of the Securities Exchange Act of 1934 and Rules 15c3-1, 17a-11 and 17a-3(a)(11) promulgated thereunder, and FINRA Rule 2010.

We also advised Alexander Capital today that in the event the Firm wishes to file a "Wells" submission indicating why an action should not be brought against the Firm for some or all of the proposed alleged violations, it is due two weeks from September 1, 2015 (*i.e.*, by **September 15, 2015**) and must not exceed 35 pages. Wells submissions are *not* treated as settlement documents and any statements contained therein may be used against Alexander Capital at, among other things, a FINRA disciplinary proceeding.

If you have any further questions, please call me at (516) 827-6154.

Very truly yours,

Artur M. Wlazlo
Principal Regional Counsel