**RDII Ex. 55**

**10-31-19 *Alexander Capital LP*,**
**Respondent**
**Letter Of Acceptance, Waiver, & Consent**
**(AWC)**
**FINRA #2016047616401**

**FINANCIAL INDUSTRY REGULATORY AUTHORITY**
**LETTER OF ACCEPTANCE, WAIVER AND CONSENT**
**NO. 2016047616401**

TO:     Department of Enforcement
        Financial Industry Regulatory Authority (FINRA)

RE:     Alexander Capital, L.P., Respondent
        Member Firm
        BD No. 40077

        Thomas Sullivan, Respondent
        Financial Operations Principal
        CRD No. 1145000

Pursuant to FINRA Rule 9216 of FINRA's Code of Procedure, Respondents Alexander Capital,
L.P. ("Alexander Capital" or the "Firm") and Thomas Sullivan ("Sullivan")(collectively,
"Respondents") submit this Letter of Acceptance, Waiver and Consent (AWC) for the purpose of
proposing a settlement of the alleged rule violations described below. This AWC is submitted on
the condition that, if accepted, FINRA will not bring any future actions against Respondents
alleging violations based on the same factual findings described herein.

**I.**

**ACCEPTANCE AND CONSENT**

A.     Respondents hereby accept and consent, without admitting or denying the findings, and
       solely for the purposes of this proceeding and any other proceeding brought by or on
       behalf of FINRA, or to which FINRA is a party, prior to a hearing and without an
       adjudication of any issue of law or fact, to the entry of the following findings by FINRA:

**BACKGROUND**

Alexander Capital has been a FINRA member since June 1996. The Firm employs
approximately 58 registered representatives and has three registered branch offices. Its
principal place of business is New York, New York. Alexander Capital engages in a
general securities business.

Thomas Sullivan first became registered with FINRA as a General Securities
Representative in 1986. In 2014, Sullivan became associated with Alexander Capital,
where he is registered as a Financial and Operations Principal and in several other
capacities. Sullivan has served as the Firm's Chief Financial Officer and Financial and
Operations Principal ("FINOP") since 2014. Sullivan is currently associated with one
other FINRA member firm.

## RELEVANT DISCIPLINARY HISTORY

Alexander Capital does not have any relevant disciplinary history with the Securities and Exchange Commission, any state securities regulators, FINRA, or any other self-regulatory organization.

Sullivan does not have any disciplinary history with the Securities and Exchange Commission, any state securities regulators, FINRA, or any other self-regulatory organization.

## OVERVIEW

At various points between 2016 and 2018, Alexander Capital conducted a securities business while below its net capital requirement. Also during this time period, the Firm did not prepare accurate net capital computations, filed inaccurate Financial and Operational Combined Uniform Single ("FOCUS") reports, and maintained inaccurate books and records. As a result of the foregoing, Alexander Capital violated Sections 15(c) and 17(a) of the Securities Exchange Act of 1934 ("Exchange Act"), Rules 15c3-1, 17a-3, and 17a-5 promulgated thereunder, and FINRA Rules 4110(b)(1), 4511 and 2010. Additionally, in 2016, the Firm made a material change in its business operations by participating in firm commitment offerings without receiving approval from FINRA to do so in violation of NASD Rule 1017 and FINRA Rule 2010.

During the time period of the violations discussed herein, Sullivan was the FINOP for the Firm. As FINOP, Sullivan was responsible for, among other things, calculating Alexander Capital's net capital and maintaining the accuracy of the Firm's general ledger, trial balance, and balance sheet. He was also responsible for the accuracy of the Firm's FOCUS reports. Sullivan violated FINRA Rule 2010 by causing Alexander Capital to violate Sections 15 and 17 of the Exchange Act. Additionally, by permitting the Firm to continue its securities business during the time period the Firm was below its net capital requirement and causing its books and records to be inaccurate, Sullivan violated FINRA Rules 4110(b)(1), 4511 and 2010.

## FACTS AND VIOLATIVE CONDUCT

### A. Net Capital Violations

Section 15(c) of the Exchange Act and Rule 15c3-1(a) require broker-dealers to maintain certain minimum levels of net capital. Violations of Section 15(c) of the Exchange Act and Exchange Act Rule 15c3-1(a) constitute a violation of FINRA Rule 2010.

Sullivan, as Alexander Capital's FINOP, had responsibility for the Firm's compliance with financial responsibility rules and for the accuracy of financial reports submitted to FINRA.

FINRA Rule 4110(b)(1) provides that a member shall suspend all business operations

during any period in which it is not in compliance with applicable net capital requirements as set forth in Exchange Act Rule 15c3-1. An individual violates FINRA Rules 4110(b) and 2010 when he or she permits a FINRA member firm to conduct a securities business at a time when the firm is failing to maintain its required minimum net capital.

### 1. 2016 Net Capital Violations

For a majority of February, March, April, and June 2016, the Firm conducted a securities business while failing to maintain its minimum net capital requirement. The net capital deficiencies ranged from approximately $23,000 to $146,000. These net capital deficiencies arose from two separate failures.

First, between January 2016 and June 2016, Alexander Capital participated in 16 firm commitment offerings. Pursuant to Exchange Act Rule 15c3-1(a)(2)(iv), while conducting this business, the Firm was required to maintain net capital of $50,000 or more. The Firm, acting through Sullivan, failed to recognize that its minimum net capital requirement increased from the minimum requirement of $5,000 to $50,000.

Second, the Firm, acting through Sullivan, included three different types of non-allowable receivables in the Firm's capital computations. These receivables were: 1) referral fees from an affiliated fund; 2) receivables from the over-payment of rent to the Firm's parent company; and 3) a trade error receivable which was booked as allowable based on a representation that the registered representative was going to reimburse the Firm. Each of these receivables is non-allowable for net capital purposes because they are unsecured, non-guaranteed receivables with no offsetting payables. Sullivan misclassified these receivables in part because he failed to take reasonable steps to understand the nature of these receivables.

### 2. 2017 Net Capital Violations

In 2017, the Firm conducted a securities business during the following periods while failing to maintain its minimum net capital requirement: 1) April 28, 2017-May 5, 2017; 2) May 31, 2017-June 2, 2017; and 3) July 31, 2017-August 11, 2017. During these periods, the Firm was below its minimum net capital requirement of $5,000 by amounts ranging from approximately $7,000 to approximately $25,000. These net capital deficiencies were due to the failure of the Firm, acting through Sullivan, to correctly classify certain receivables as non-allowable, including referral fees from an affiliated fund and other investment banking fees the Firm had not yet received.

### 3. 2018 Net Capital Violations

Between June 29, 2018 and July 6, 2018, the Firm conducted a securities business while failing to maintain its minimum net capital requirement of $5,000. The net capital deficiency during this period was approximately $8,000. The deficiency was due to the failure of the Firm, acting through Sullivan, to properly record a liability arising from a

Securities and Exchange Commission ("SEC") administrative proceeding that the Firm did not pay until July 2018.

\*      \*      \*

By virtue of the foregoing, Alexander Capital violated Section 15(c) of the Exchange Act, Rule 15c3-1 promulgated thereunder, and FINRA Rules 4110(b)(1) and 2010. Sullivan violated FINRA Rule 2010 by causing Alexander Capital to violate Section 15(c) of the Securities Exchange Act and Exchange Act Rule 15c3-1; Sullivan also violated FINRA Rules 4110(b)(1) and 2010.

### B. Books and Records and Reporting Violations

Section 17(a) of the Exchange Act and Rule 17a-3 promulgated thereunder require, among other things, that broker-dealers maintain accurate books and records, including general ledgers and net capital calculations. Exchange Act Rule 17a-5 requires, among other things, that broker-dealers file accurate quarterly FOCUS Reports. FINRA Rule 4511 requires its members to make and preserve accurate books and records as required under the Exchange Act and applicable Exchange Act Rules. An individual FINOP violates FINRA Rules 4511 and 2010 when he or she makes and keeps inaccurate books and records, such as a general ledger, trial balance, and net capital computations. It is also a violation of FINRA Rule 4511 and 2010 to file inaccurate FOCUS reports on a member's behalf.

During several periods between 2016 and 2018, Alexander Capital, acting through Sullivan, failed to prepare accurate financial books and records.

For the months of February 2016, March 2016, April 2016, and June 2016, the Firm failed to prepare accurate net capital computations and submitted inaccurate FOCUS reports, due to its misclassification of certain receivables and failure to use the correct minimum required net capital.

For the months of April 2017, May 2017, and June 2017, the Firm submitted inaccurate FOCUS reports. Additionally, during the following periods the Firm failed to prepare accurate net capital computations: 1) April 28, 2017-May 5, 2017; 2) May 31, 2017-June 2, 2017 and 3) July 31, 2017-August 11, 2017. These recordkeeping failures stemmed the Firm's failure to correctly classify certain investment banking receivables as non-allowable.

The Firm submitted an inaccurate FOCUS filing in June 2018. For the period from June 29, 2018 through July 6, 2018, the Firm maintained an inaccurate general ledger and failed to prepare accurate net capital computations, due to its failure to properly record a liability arising from the SEC administrative proceeding.

By virtue of the foregoing, Alexander Capital violated Section 17(a) of the Exchange Act and Rules 17a-3 and 17a-5 promulgated thereunder, and FINRA Rules 4511 and 2010.

Sullivan violated FINRA Rule 2010 by causing Alexander Capital to violate Section 17(a) of the Exchange Act and Rules 17a-3 and 17a-5 promulgated thereunder; Sullivan also violated FINRA Rules 4511 and 2010.

### C.  Material Change in Business Operations/Membership Agreement

NASD Rule 1017(a) requires a member firm to file with FINRA an application seeking approval of any material change in its business operations. NASD Rule 1017(c) prohibits firms from implementing a material change in business operations until that change is approved by FINRA.

On June 3, 2015, Alexander Capital filed a Rule 1017 application seeking approval to engage in firm commitment offerings, among other activities.  On February 10, 2016, the Firm withdrew this application.

Between January 2016 and June 2016, the Firm engaged in 16 firm commitment offerings.  Alexander Capital's membership agreement, however, did not permit the Firm to participate in firm commitment offerings.  By participating in firm commitment offerings, the Firm implemented a material change in its business operations.  Alexander Capital did not receive approval from FINRA before doing so.

By virtue of the foregoing, Alexander Capital violated NASD Rule 1017 and FINRA Rule 2010.

B.     Respondents also consent to the imposition of the following sanctions:

- For Alexander Capital, a censure and a $45,000 fine.

- For Sullivan, a fine of $5,000; a one month suspension from association with any FINRA member firm in a FINOP capacity; and a requirement to re-qualify as a FINOP by taking the requisite examination.

Respondents agree to pay the monetary sanctions upon notice that this AWC has been accepted and that such payments are due and payable.  Respondents have each submitted an Election of Payment form showing the method by which Respondent proposes to pay the fine imposed.

Respondents specifically and voluntarily waive any right to claim that Respondents are unable to pay, now or at any time hereafter, the monetary sanctions imposed in this matter.

Respondent Sullivan understands that if he is barred or suspended from associating with any FINRA member in a FINOP capacity, he becomes subject to a statutory disqualification as that term is defined in Article III, Section 4 of FINRA's By-Laws, incorporating Section 3(a)(39) of the Securities Exchange Act of 1934.  Accordingly,

Respondent may not be associated with any FINRA member in a FINOP capacity, during the period of the bar or suspension. See FINRA Rules 8310 and 8311. Furthermore, because Respondent is subject to a statutory disqualification during the suspension, if he remains associated with a Member Firm in a non-suspended capacity, an application to continue that association may be required.

The sanctions imposed herein shall be effective on a date set by FINRA staff.

## II.

## WAIVER OF PROCEDURAL RIGHTS

Respondents specifically and voluntarily waive the following rights granted under FINRA's Code of Procedure:

A.  To have a Complaint issued specifying the allegations against them;

B.  To be notified of the Complaint and have the opportunity to answer the allegations in writing;

C.  To defend against the allegations in a disciplinary hearing before a hearing panel, to have a written record of the hearing made and to have a written decision issued; and

D.  To appeal any such decision to the National Adjudicatory Council (NAC) and then to the U.S. Securities and Exchange Commission and a U.S. Court of Appeals.

Further, Respondents specifically and voluntarily waive any right to claim bias or prejudgment of the Chief Legal Officer, the NAC, or any member of the NAC, in connection with such person's or body's participation in discussions regarding the terms and conditions of this AWC, or other consideration of this AWC, including acceptance or rejection of this AWC.

Respondents further specifically and voluntarily waive any right to claim that a person violated the ex parte prohibitions of FINRA Rule 9143 or the separation of functions prohibitions of FINRA Rule 9144, in connection with such person's or body's participation in discussions regarding the terms and conditions of this AWC, or other consideration of this AWC, including its acceptance or rejection.

## III.

## OTHER MATTERS

Respondents understand that:

A.  Submission of this AWC is voluntary and will not resolve this matter unless and

6

until it has been reviewed and accepted by the NAC, a Review Subcommittee of the NAC, or the Office of Disciplinary Affairs (ODA), pursuant to FINRA Rule 9216;

B.  If this AWC is not accepted, its submission will not be used as evidence to prove any of the allegations against Respondents; and

C.  If accepted:

1.  this AWC will become part of Respondents' permanent disciplinary record and may be considered in any future action brought by FINRA or any other regulator against Respondents;

2.  this AWC will be made available through FINRA's public disclosure program in accordance with FINRA Rule 8313;

3.  FINRA may make a public announcement concerning this agreement and the subject matter thereof in accordance with FINRA Rule 8313; and

4.  Respondents may not take any action or make or permit to be made any public statement, including in regulatory filings or otherwise, denying, directly or indirectly, any finding in this AWC or create the impression that the AWC is without factual basis. Respondents may not take any position in any proceeding brought by or on behalf of FINRA, or to which FINRA is a party, that is inconsistent with any part of this AWC. Nothing in this provision affects Respondents': (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which FINRA is not a party.

D.  Respondents may attach a Corrective Action Statement to this AWC that is a statement of demonstrable corrective steps taken to prevent future misconduct. Respondents understand that they may not deny the charges or make any statement that is inconsistent with the AWC in this Statement. This Statement does not constitute factual or legal findings by FINRA, nor does it reflect the views of FINRA or its staff.

The undersigned, on behalf of the Respondent Firm, certifies that a person duly authorized to act on its behalf has read and understands all of the provisions of this AWC and has been given a full opportunity to ask questions about it; that it has agreed to the AWC's provisions voluntarily; and that no offer, threat, inducement, or promise of any kind, other than the terms set forth herein and the prospect of avoiding the issuance of a Complaint, has been made to induce it to submit it.

7

Alexander Capital, L.P.,
**Respondent**

By: _____

Print Name: _____

Title: _____

_____
Date

Respondent Sullivan certifies that he has read and understands all of the provisions of this AWC and has been given a full opportunity to ask questions about it; Respondent Sullivan has agreed to the AWC's provisions voluntarily; and no offer, threat, inducement, or promise of any kind, other than the terms set forth herein and the prospect of avoiding the issuance of a Complaint, has been made to induce him to submit this AWC.

10/15/19
_____
Date

_____
Thomas Sullivan
Respondent

Reviewed by;

_____
Scott Holcomb, Esq.
Holcomb & Ward LLP
Counsel for Respondents
3399 Peachtree Road, NE
Suite 400
Atlanta, GA 30326

Accepted by FINRA:

10/31/19
_____
Date

Signed on behalf of the
Director of ODA, by delegated authority

_____

8

Reema Abdelhamid
Senior Counsel
FINRA
Department of Enforcement
Brookfield Place, 200 Liberty Street
New York, NY 10281