UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOHN J. AQUINO, CHAPTER 7 TRUSTEE,
By Its Assignee, Convergent Distributors of
Texas, LLC,

    Plaintiff,

    vs.          Case No.: 1:21-cv-01355-JSR

ALEXANDER CAPITAL, LP, JOSEPH
AMATO, ROCCO GUIDICIPIETRO, and
NESA MANAGEMENT, LLC,

    Defendants.

---

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION IN LIMINE CONCERNING DAMAGES**

# Table of Authorities

**Rules**

Fed. R. Evid. 402 ................................................................................................. 3, 4, 5

## I. Introduction

Defendants bring this motion *in limine* to request that the Court exclude certain of Plaintiff's experts' damages opinions and confine the evidence of damages Plaintiff may introduce at trial to the limited categories remaining following this Court's Order on Summary Judgment. (Dkt. 150.)

To support its claims for damages, Plaintiff relies on its expert William Purcell whose opinions and damages calculations are detailed in his August 20, 2021 Rule 26 Report.[1] Plaintiff has identified Mr. Purcell as a potential witness on Plaintiff's Rule 26(a) Pretrial Disclosures. (*See* Dkt. 176.) The majority of Mr. Purcell's substantive opinions are irrelevant in light of the Court's Summary Judgment rulings. Purcell's damages analysis, set forth in Opinions 18 and 19 of his Report, opined that Plaintiff's "calculated damage amount" is "approximately $77 million" falling into two general categories: (1) the destruction of Inpellis's pre-IPO business value of at least $75 million; and (2) Inpellis's incurred expenses totaling $2,057,626. (Dkt. 136-12 at 148-153, Ex.3 to Supp. Report at 47-52.)

Plaintiff's available damages are severely undercut due to the Court's ruling in Defendants' favor on summary judgment that "ACLP's alleged fraud, fraudulent inducement, and breaches of the engagement agreements did not proximately cause the IPO's failure" and that Plaintiff "is precluded from seeking" $75 million in alleged "lost business" damages. (Dkt. 150 at 4-5; *see also* Dkt. 164 at 3-16.) Assuming Plaintiff prevails on any claim at trial, this Court limited Plaintiff's potential recovery to the expenses incurred in connection with its engagement of Alexander as managing underwriter under the July 2014 Engagement Agreement. (*Id.* at 51.) According to

---

[1] On April 8, 2022, Plaintiff submitted a Supplemental Report from Mr. Purcell. (*See* Dkt. 136-12.) The Supplemental Report incorporated by reference and included a copy of Mr. Purcell's original report. (*Id.* at 16-19; Exhibit 3 to the Supplemental Report.)

1

Purcell's Report, these alleged expenses — totaling $2,057,626 — fall into the following categories:

    (i)      The cost of retaining Alexander and paying some of its expenses throughout the pre-IPO process;

    (ii)     The cost of retaining various professional firms to perform pre-IPO work in the areas of legal, accounting, and public/investor relations;

    (iii)    The cost of retaining, at a significant expense, Dr. Mooney and opening a New Jersey office to accommodate Dr. Mooney;

    (iv)    The cost of entering into agreements to incur $6.25 million of debt and paying Alexander a significant fee related to that debt;

    (v)     The cost of retaining legal representation to respond to the SEC investigation in late 2015; and

    (vi)    The significant expense of separating from Dr. Mooney and closing the New Jersey office that Inpellis only opened because of his retention.

(Dkt. 136-12 at 149-153.)

At least three of these categories are unavailable because of the Court's rulings on summary judgment. Therefore, to streamline trial and to prevent the attempted introduction of irrelevant evidence, Defendants move to limit the damages evidence to those categories available to Plaintiff consistent with the Court's rulings. *See Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) ("The purpose of an in limine motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.")

## II. The Court Should Preclude Evidence Regarding Damages to Which Plaintiff is not Entitled

Plaintiff may only seek "damages associated with alleged legal, accounting, and other costs incurred in contention with Inpellis's collaboration with Alexander under the First Engagement Agreement and Inpellis's decision to enter into the $6.25 million bridge financing arrangement" in connection with its remaining claims for fraudulent inducement, fraud, and breach of contract. (Doc. 150 at 51, 56-57, 62.)

### a. Expenses related to Dr. Mooney's Hiring and New Jersey Office

According to Purcell's Report, Plaintiff seeks to recover expenses "incurred retaining Dr. Mooney and opening a New Jersey office to accommodate Dr. Mooney," amounting to $732,042. (Dkt. 136-12 at 150-151.) Purcell opines that these expenses are attributable to Alexander because "Inpellis was compelled by Alexander Capital to retain Dr. Mooney as part of its efforts to conduct the IPO." (*Id.* at 49.) Expenses associated with Inpellis's decision to replace its CEO with Dr. Mooney are not recoverable under the Court's Summary Judgment Order. The Court expressly found that the undisputed record contradicted the proposition that Alexander caused Inpellis to hire Dr. Mooney. (Dkt. 150 at 53.) In fact, the evidence proffered by Plaintiff on this point showed that, at most, Mr. Carlin of Alexander suggested that Dr. Mooney be hired. (*Id.*) Contrary to Mr. Purcell's unsupported opinion, the Court found that "even taking the record in the light most favorable to the plaintiff, the Court discerns no factual basis for the allegation that ACLP compelled or fraudulently induced Inpellis to hire Mooney," and that "plaintiff nowhere adduces any evidence whatsoever to support the allegation that Carlin and ACLP coerced or tricked Inpellis into hiring Mooney." (*Id.*) Accordingly, as Plaintiff already lost on this theory of liability, Plaintiff cannot recover these damages at trial and any evidence as to these expenses is irrelevant and inadmissible at trial. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

3

### b. Legal Representation to Respond to the SEC's Investigation

Plaintiff also seeks to recover damages relating to "Expenses incurred to retain legal representation to respond to the SEC investigation in late 2015," allegedly totaling $91,005. (Dkt. 136-12 at 151.) Purcell's Report acknowledges that these expenses were all incurred after the public filing of the S-1 and in relation to the SEC's Stop Order. (*Id.*) Expenses associated with responding to the SEC investigation are not recoverable under the Court's Summary Judgment Order. Contrary to Purcell's opinion that the SEC's "stop order and investigation were clearly the result of inappropriate conduct of Alexander Capital," the Court found otherwise. Specifically, the Court found that Inpellis was ultimately responsible for the disclosures that led to the Stop Order and the SEC investigation. (Dkt. 150 at 43-44, 55.) Because the Court found that Alexander's alleged conduct was not the proximate cause of the SEC's Stop Order and investigation, Plaintiff is precluded from seeking damages stemming from the SEC's actions. (*Id*. 43-45.)

As the Court has already rejected the theory of liability on which this category of damages rests, Plaintiff cannot recover these damages at trial and any evidence as to these expenses is irrelevant and inadmissible at trial. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

### c. Dr. Mooney's Separation and NJ Office Closing

Plaintiff seeks to recover damages associated with its "Expenses incurred to separate from Dr. Mooney and close the NJ office," totaling $317,500. (Dkt. 136-12 at 151-152.) Purcell opines that these expenses were attributable directly to the failed IPO because Inpellis "retained Dr. Mooney exclusively because of the expected IPO," and "once it was clear the IPO was not going to happen" he was terminated. (*Id*. at 151.) This opinion — that the expense incurred to separate from Mooney and to close the New Jersey office are recoverable — is based on the premise that the failure of the IPO is properly attributable to Alexander. The Court's Summary Judgment Order affirmatively and conclusively rejected the grounds for Purcell's opinion regarding these alleged

4

expenses. First, the Court found that Plaintiff's claim that ACLP's alleged fraudulent course of conduct "caused Inpellis to hire ACLP's compromised employee as Inpellis's CEO" was contradicted by the undisputed record and that the facts "collectively undermine the aspect of the fraud claim concerning Mooney's hiring, and the plaintiff offers no facts that create a triable issue on this theory of liability. (Dkt. 150 at 53-54.) Second, the Court rejected Plaintiff's claim that the failure of the IPO was proximately caused by ACLP's alleged fraud and breach of contract. (*Id.* at 44-45.) Because the expenses Inpellis incurred in connection with the termination of Dr. Mooney as CEO and the closure of the New Jersey office are part of the "failed IPO" damages the Court has precluded, they are not recoverable at trial under the Court's Summary Judgment ruling.

Therefore, any evidence as to these expenses is irrelevant and inadmissible at trial. *See* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

## III. Conclusion

The Court's Order on Summary Judgment significantly narrowed the scope of this case. By limiting Plaintiff to offering only evidence in support of the categories of damages that remain viable, the Court can streamline the scope of relevant evidence at trial, focus on the remaining disputed factual issues, and avoid unnecessary interruptions at trial. Plaintiff, having already been denied the ability to recover on these theories of liability, will not be prejudiced by an Order precluding it from raising, directly or indirectly, evidence of damages the Court has already rejected.

Accordingly, Defendants seek an Order precluding Plaintiff from offering the following evidence at trial:

1. Evidence related to Inpellis's alleged $75 million lost business value;

2. Evidence related to the costs associated with hiring Dr. Mooney and establishing the New Jersey office allegedly totaling $732,042;

3. Evidence related to the costs associated with terminating Dr. Mooney and closing the New Jersey Office allegedly totaling $317,500; and

4. Evidence related to the legal expenses associated with Inpellis's response to the SEC's Stop Order and subsequent investigation of Inpellis allegedly totaling $91.500.

Respectfully submitted, this 12th day of June 2023.

/s/ *Bryan M. Ward*
Bryan M. Ward (*Pro Hac Vice*)
Aaron Wright (*Pro Hac Vice*)
Holly Cole (*Pro Hac Vice*)
Holcomb + Ward, LLP
3455 Peachtree Road NE
Suite 500
Atlanta, Georgia 30326
404-601-2803
Bryan.Ward@holcombward.com
Aaron@holcombward.com
Holly@holcombward.com
*Counsel for Defendants Alexander Capital LP, Joseph Amato, Rocco Guidicipietro, and NESA Management, LLC*